**WHEELER et al. v. WIDENER et al.**

No. 8551.  Opinion Filed July 8, 1919.

Rehearing Denied September 9, 1919.

(Syllabus by the Court.)

1. **Public Lands—Homestead—Contract to Convey—Validity.**

Contracts concerning the purchase and conveyance of public land, made prior to the entry and proving up of the homestead claim, are violative of the spirit of the laws of the United States, and in fraud thereof, and cannot be enforced by a court of equity.

2. **Same—Resulting Trust—Evidence.**

Record examined and held, that the plaintiffs are not entitled to the relief prayed for.

Error from District Court, Pawnee County; W. M. Bowles, Judge.

Action by May Wheeler and others against James Widener and others. From judgment for defendants, plaintiffs bring error. Affirmed.

McNeill & McNeill, for plaintiffs in error.

R. A. Lowry and C. L. Burdick, for defendants in error.

KANE, J.  This was an action commenced by the plaintiffs in error, plaintiffs below, against the defendant in error James Widener, for the purpose of declaring a resulting trust in a certain tract of land entered and proved up by Widener under the homestead laws of the United States. Upon trial to the court there was judgment in favor of the defendants, to reverse which this proceeding in error was commenced. Hereafter, for convenience, the parties will be designated as "plaintiffs" and "defendants," respectively, as they appeared in the trial court.

It appears that the land in controversy was entered by the defendant as a homestead some time during the year 1893, that it was subsequently proved up by the entryman, and that a patent therefor was issued in his name. The petition alleges, in substance:

That prior to the time the land was entered as a homestead the defendant and his wife, Weltha Widener, resided in a small town in the state of Kansas; that the defendant was sickly, and unable to do manual labor or work of any kind; that at that time the family of the Wideners consisted of seven children, three of them being small and unable to care for themselves or to do manual labor, and the remaining four being either adults or large enough to help with the work incident to proving up a claim; that by reason of the ill health of the defendant, the care and support of the family devolved largely upon Weltha Widener, his wife, and the children large enough to do manual labor; that Weltha Widener, being desirous of obtaining a home for herself and children, urged the defendant to make homestead entry upon a certain claim in Oklahoma, information concerning which had been furnished to the defendant and the members of his family by May Widener, now May Wheeler, one of the plaintiffs herein; that the defendant objected to going to Oklahoma and filing upon said land on account of his physical condition, believing that he would not live a sufficient length of time to prove up said claim, and because he had no money or means at that time either to file upon the land or to remove to Oklahoma; that said Weltha Widener being unable to go to Oklahoma herself on account of her small children, and being obliged to work to support the family, she and John Widener and May Widener, now May Wheeler, adult children of the Wideners, entered into an oral contract and agreement with the defendant, the purport of which is stated in the petition as follows:

"James Widener should come to the said state of Oklahoma and file upon the land as described to him by the said May Widener, now May Wheeler, and the said Weltha Widener and John Widener and May Wheeler especially would advance the money for the filing on said claim and with the horse and mule of Weltha Widener, the said John Widener, with the younger children as they advanced in age, would build a home upon said land and improve the same and make a home for the said Weltha Widener and the said James Widener and children, and the same to be the property of Weltha Widener."

That in accordance with said agreement the said defendant came to Oklahoma and filed upon the land involved herein; that shortly thereafter Weltha Widener and said children came to Oklahoma, where they proceeded to improve said land and to make the same their homestead; that the said Weltha Widener carried out her portion of said agreement and furnished the money and advanced the same to the said James Widener for the purpose of filing upon said land; that said John Widener and May Wheeler carried out their portion of said agreement by the said John Widener building a house upon said land and improving said land according to their said agreement that the said land should be the property of the said Weltha Widener and the homestead of the said Weltha Widener. The petition then sets forth in detail the work and labor performed by the various members of the family in pursuance of this contract, and further

alleges in substance that all of said agreements upon behalf of the said Weltha Widener were carried out on her part, and that by reason thereof the patent obtained by the said James Widener in his name should inure to the use and benefit of the said Weltha Widener, and that said land should be held to be the home of the said Weltha Widener and said children; that the said Weltha Widener died on or about the 10th day of April, 1909, at which date she was still residing upon said land and premises, never having sold or disposed of the same, the record title thereto still remaining in the said James Widener; that since the death of the said Weltha Widener, said defendant, holding a clear record title to said premises, has collected and received large amounts of oil and gas royalties from said land: that, said land being the homestead of the said Weltha Widener, and being the property of the said Weltha Widener, title of which is held in trust by the said James Widener for her use and benefit, only one-third of the royalties received from said premises belong to said James Widener, the balance belonging to said children by right of inheritance from said Weltha Widener; that said James Widener is now spending said money extravagantly and wasting the same on a second wife, whom he has lately married, and fails and refuses to deliver to the said plaintiffs, or either of them, their portion of said estate.

Then follows a prayer that a resulting trust be declared, and that the land and proceeds thereof be distributed to the parties, plaintiff and defendant, in such proportion as they would be entitled to as heirs of Weltha Widener, deceased. The evidence relied upon to establish this contract consisted largely of conversations between different members of the Widener family, at various conferences or family councils, held for the purpose of discussing the important question of taking up a claim in Oklahoma.

While there was a great deal of this evidence admitted at the trial, practically covering the history of the Widener family for twenty years or more, we do not deem it necessary to set it out in this opinion or to review it at any great length. On this point it is sufficient to say that we have examined the record carefully, and are satisfied that wherever there was conflict in the evidence on any material point the general findings of the trial court thereon in favor of the defendants were sustained by a preponderance of the evidence. But, assuming that there was evidence tending to establish the contract set up in the petition and none to the

contrary, as counsel contends, still in our judgment the plaintiffs would not be entitled to the relief prayed. It would not be difficult to cite any number of cases holding that contracts concerning the purchase and conveyance of public lands made prior to the entry and proving up of the homestead claim are violative of the spirit of the laws of the United States and in fraud thereof and cannot be enforced by a court of equity. Counsel for the plaintiffs concede the soundness of the general rule, but they say that the contract involved in the case at bar falls within a recognized exception under which similar contracts have been upheld by the courts of several of the states and by the Supreme Court of the United States. In support of this contention they cite Barlow v. Barlow, 47 Kan. 676, 28 Pac. 607; McElhaney v. McElhaney, 125 Iowa, 279, 101 N. W. 90; Irvine v. Marshall et al., 20 How. 558, 15 L. Ed. 994.

We do not believe that any of these cases are analogous to the case at bar, or that they support the contention made by counsel for the plaintiffs. In the Kansas case, which is most nearly in point, the controversy was between Mrs. Barlow, the wife of a deceased homestead entryman, and the heirs of the latter who claimed that they were entitled in the aggregate to one-half of the land, under the laws of descent and distribution of that state. The trial court, in addition to finding that Mrs. Barlow furnished the money expended in procuring the homestead and the labor and money used in putting the improvements thereon, and in proving up the same, also significantly found that, although Mr. Barlow was the nominal head of the family, yet, because of his infirmities, his wife was the real and actual head thereof. The Supreme Court approved the findings of the trial court and held that, as the contract previously entered into between husband and wife merely had the effect of transferring the legal title to the homestead from the nominal head, who was not really entitled to make the homestead entry, to the real head of the family, who was, it was not violative of the homestead laws. The trial court, in the instant case, not only found against the plaintiffs as to the existence of any contract, but also found that Widener was the actual head of the family at the time the homestead entry was made, and that he continued to occupy this relation up to and subsequent to the death of his first wife, Weltha Wideto distinguish them.

After a careful examination of the evinot in point that we do not deem it necessary

thereon by the trial court, which are incorporated in the record, we have no doubt of the correctness of his conclusions. The trial court found that Widener was a man of more than ordinary intelligence, and that, while perhaps he was incapacitated from performing continuous hard labor, he was always doing something in the way of supplying labor, money, and counsel toward carrying on the common purpose of proving up the claim and supporting his wife and family. And, even if it is conceded that Widener entered the land in response to the yearnings of his wife for a home, it seems to us his obligation in that regard was fully performed in accordance with her expectations. The evidence conclusively shows that Mrs. Widener moved upon he land shortly after it was entered as a homestead, and continued to occupy the s me with her husband and fam. ly, from th . time until her death, which occurred set ral years after the land had been proved up and patented to her husband. That she considered that whatever arrangements she had made with her husband concerning the entry of the land as a homestead had been satisfactorily executed by him is amply attested by the fact that she never at any time disputed his title or intimated that he was merely holding the land in trust for her. It is true that she often spoke of the land as her home, and such in truth and in fact it was. The land was the homestead of the family, and as such it was not only the home of the father, the head of the family. but of his wife and of such of their children as remained beneath their roof-tree. On the whole case we are constrained to agree with the trial court, who closed his review of the evidence as follows:

"How in the name of sense we could declare a resulting trust is a mystery to me: every dollar that was furnished was furnished by him and went through this man's hands; if a deed could be set aside on evidence of this sort, there is not a man before me that has got a family of children that they couldn't come in and make a will for him right away, just take his property away from him or have it either deeded to them or the mother. I could deed it to the children as well as I could to the mother, under perhaps the same sort of a contract; so you wouldn't have to wait until a man died to get what he has got, but just split it up as soon as the children are ready to get hold of it; that is what this means, nothing more or nothing less. Judgment in favor of the defendant."

For the reasons stated, the judgment of the court below is affirmed.

OWEN, C. J., and RAINEY, JOHNSON, and HARRISON, JJ., concur.