EVANS et al. v. LOCAL BLDG. & LOAN ASS'N.

No. 22909.   Oct. 16, 1934.

Sigler & Jackson, for plaintiffs in error.

Everest, McKenzie, Halley & Gibbens, for defendant in error.

PER CURIAM. Plaintiffs alleged in their petition that they were the daughters and two of the heirs at law of Lee Cathey, deceased. and that they and their mother, Laura S. Cathey, were the joint owners of certain lots in the city of Ardmore, Okla., having inherited the same from the said Lee Cathey, deceased. Plaintiffs alleged that on April 23, 1907, the said Lee Cathey, de-

ceased, without consideration, executed a deed to the property to his wife, Laura S. Cathey, but that the deed was never delivered. Plaintiffs alleged that this deed was recorded during the lifetime of the grantor, but without his knowledge or consent on or about March 25, 1913. It was asserted that by reason of the want of consideration and nondelivery, said deed was void, but that the facts and circumstances as alleged were not discovered by the plaintiffs until the year 1925, after the defendant had acquired the legal title to the property under a mortgage foreclosure sale. After issue had been joined on this petition by the answer of the defendant, the plaintiffs filed a supplemental petition in which they set up as a second cause of action a demand for possession and for rents and profits. Defendant asked that its title be quieted against the plaintiffs.

Laura S. Cathey testified as a witness for the plaintiffs, and stated that the deed from her husband, Lee Cathey, to herself, mentioned in the petition, had not been delivered to her, and that she never knew of its existence until after the grantor's death, when she was told by her lawyer that she was the record owner of the property. But this witness was thoroughly impeached and discredited. It was shown that after the date of the deed, and during the lifetime of the grantor, she had rendered the property for taxation, and that it had been carried on the tax rolls in her name. The reception record of the county clerk showed the deed to have been filed for record by her and returned to her after being recorded. It was shown that she had made application for mortgage loans in which she represented and asserted that she was the owner of the property, and that she had executed mortgages thereon in which she had been joined by her husband, the names of the mortgagors being given as "Laura S. Cathey and Lee Cathey, wife and husband." It was shown that after the death of the grantor, she was appointed administratrix of his estate, and filed in probate proceedings a sworn statement, in which she expressly denied that the property involved was "property belonging to the estate of said deceased," but expressly alleged "that said property is her sole, separate, and independent property purchased by her, with her own funds and estate, and has been in her actual possession for more than 15 years last past." The inventory which she filed as administratrix was introduced in evidence and disclosed that the property involved in this action was omitted from the inventory. In connection with the administration proceedings on the estate of her deceased husband, creditors of the estate sought to reach the property now in question and this same witness testified in that proceeding as follows:

"Q. Did he deed you this property? A. Yes, he deeded it to me. Q. The deed was in his name? A. The deed was given to him and he deeded it to me. Q. How long after did he deed it to you? A. Five or six years. * * * Q. Did you or he pay any money for this property? A. $1,500. Q. How was that paid? A. That was to be cash and I assumed the deed with a $2,500 mortgage on it. Q. That had all been paid before he died? A. No, sir; it has been paid since his death. Q. How much has been paid since his death? A. $2,000 after his death. Q. Was that paid from the insurance? A. It was. Q. Had anything been paid on this property by Mr. Cathey after he had given you a deed for it? A. No, sir; I paid off the mortgage. Q. You said that you mortgaged it? A. Yes, sir; I mortgaged it to one party to pay the other. Q. Had any part of it been paid prior to Mr. Cathey's death? A. No, sir; there was still a mortgage of $2,000 still on it. Q. Well, when you say that you mortgaged it for $2,500, then the mortgage was reduced to $2,000. A. I assumed the $2,500 mortgage and had to pay it. Q. Was there one mortgage against it or two? A. There was a $1,500 mortgage, then I assumed another $1,000 mortgage, which made a total of $2,500. Q. Then, when he deeded it to you there was a $2,500 mortgage on it? A. Yes sir. Q. How many lots in the home place? A. Four, I believe. Q. Know the numbers. A. One, two, three, four, block 105. Q. Do you know the size of those lots? A. No sir. * * * Q. You have been in possession of this property 14 years? A. Yes, sir; that is where we live now. Q. When your husband deeded you that property, you thought that he had it recorded at the time? A. Yes, sir; and I guess he did too. Q. But he had not? A. No, sir. Q. And you thought all of these years that it was recorded? A. I did."

Counsel complain that this impeaching evidence was improperly admitted. The record clearly discloses that, except as to the mortgages in which both parties joined, it was offered, received, and considered for impeachment purposes only, and it was not only effective but entirely proper for that purpose. Plaintiffs introduced one other witness, George White, a brother of the witness Laura S. Cathey and uncle of the plaintiffs. He told a highly incredible story. He stated that about six years after the date of the execution and acknowledgment of the deed from Lee Cathey to Laura S. Cathey, he met Cathey, with whom he was not on good terms, in Ardmore. He said:

"I wanted some blank bonds. I thought I was going to need one over at Kingston, Okla. I asked him if he had any blank bonds in his pocket, and he said he had some in his overcoat pocket—in his pocket or sweater, I forget which—and I went over and got them, and I didn't notice I had a deed and patent until I got to Kingston."

He stated that the deed was the deed in question, and that two or three weeks after he obtained it from Cathey's overcoat pocket or sweater pocket he slipped back to Ardmore and had it recorded without letting Cathey know anything about it, and that some time later he happened to be in Ardmore again and got Mrs. Cathey's mail out of her postoffice box, and that this deed was in the mail, having been returned from the county clerk's office, and that he put it in his pocket and carried it around in his pocket or in his grip for the next four or five years. He stated that he did not tell his sister, Laura S. Cathey, anything about the matter until considerable time after Cathey's death. It is insisted that the testimony of this witness White is affirmative and positive proof of nondelivery. The most that the plaintiffs might be entitled to claim for it would be that the recording of the deed was the surreptitious act of an intermeddler. It certainly is not any sort of proof that the deed had never been delivered to the grantee and by her subsequently intrusted to her husband for safekeeping or for record. The execution and acknowledgment of the deed, coupled with the subsequent conduct of the parties, both grantor and grantee, and particularly·in the mortgaging of the property by the grantee joined by the grantor "wife and husband," were sufficient to establish the fact of delivery as against any inferences that may be legitimately drawn from testimony of White.

This was a suit in equity. The paramount issue was the validity and effectiveness of the deed. The right to possession which was raised in the pleadings some time after the petition was filed was incidental only. It was entirely unnecessary to submit the case to a jury. In Hogan v. Leeper, 37 Okla. 655, 133 P. 190, it was held:

"A suit to cancel an instrument conveying land in trust is an equitable suit, and the verdict of a jury is merely advisory to the court, and the court may make different findings if satisfied that different findings are required by the evidence."

In the case of Moschos v. Bayless et al., 126 Okla. 25, 258 P. 263, it was held:

"Where in an action the paramount issue as formed by the pleadings is one of equitable cognizance and there exist certain issues of fact arising out of a demand for the recovery of money which are incidental to and dependent upon the equitable issue, said action is an equitable action.

"Where the gravamen of the action is of equitable cognizance or the relief sought is an equitable remedy, such as the cancellation of an oil and gas lease, the right to a jury trial is not given by statute."

In the case of Cossota v. Hirsh et al., 158 Okla. 229, 13 P. (2d) 131, it was held:

"An action, the primary purpose of which is to set aside certain deeds conveying real estate and to obtain a decree reinvesting title thereto in plaintiff, is one in equity. In such action neither party is entitled to a trial by jury."

Counsel complain of certain instructions to the jury which were given by the court, but it is unnecessary for us to examine the merit of these assignments of alleged error, for the reason that the verdict of the jury was advisory only.

In the case of Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 P. 898, it was held:

"Where a jury is impaneled in a case purely of equitable cognizance to aid the court in determining the facts, it is entirely within the discretion of the court as to what interrogatories the court propounds to such jury; and error cannot properly be assigned that the court erred in propounding such instructions, or that the interrogatories propounded were not germane to the issues involved."

In the case of Tillman v. Gazaway et al., 128 Okla. 183, 261 P. 935,. it was held:

"The giving of an erroneous instruction to a jury in an equity case is not error, as the verdict of the jury is only advisory to the court. Both questions of law and fact must be finally determined by the court himself."

We have read and examined the entire record. No injustice was practiced upon the plaintiffs. No other judgment would have been justified. The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys A. D. Cochran, Charles B. Steele, and C. A. Dickson in the preparation of this opinion. These attorneys· constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. A. D. Cochran and approved by Mr. Steele and Mr. Dickson, the cause was assigned to a Justice of

this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.