HOWARD et al. v. STANOLIND OIL & GAS CO. et al.

No. 31957. Feb. 19, 1946.

Rehearing Denied June 4, 1946.

Application for Leave to File Second Petition for Rehearing Denied June 18, 1946.

*169 P. 2d 737.*

Norman Barker, of Tulsa, and George C. Abernathy, of Shawnee, for plaintiffs in error.

Victor C. Mieher, Booth Kellough, Donald Campbell, and Ray S. Fellows, all of Tulsa, for defendants in error Stanolind Oil & Gas Company et al.

Wyatt, Wyatt & Edwards, of Shawnee, for defendant in error P. K. Norris.

RILEY, J. This action was commenced by plaintiffs in error, Susie E. Howard et al., against defendants in error, Stanolind Oil & Gas Company, Amerada Petroleum Corporation, Ardie Oil & Gas Company, American Royalty Petroleum Company, the Heller Company, Anderson-Prichard Oil Corporation, C. B. Billington, and 26 individuals, and Wesley M. Smith, administrator of the estate of Lelah F. Smith, deceased, to quiet title to a quarter section of land and to cancel instruments purporting to convey title to the land described as the southwest quarter, section 32, township 2 north, range 3 east, Pottawatomie county, Oklahoma. An accounting was sought for oil and gas extracted of the alleged value of $300,000. Judgment in that amount was sought against the Stanolind Oil & Gas Company and Amerada Petroleum Corporation.

Plaintiff Susie E. Howard is the widow of Samuel E. Howard, the other plaintiffs are his children and grandchildren. Samuel E. Howard was the son and only child of William B. and Matilda A. Howard, both deceased. Plaintiffs claim as purchasers from or as heirs and descendants of said William B. and Matilda A. Howard. William B. Howard, in 1892, entered the land involved, under Homestead Laws of the United States of America. He made final proof and received final certificate dated June 10, 1899. Patent was issued November 20, 1899. Plaintiffs base their claim of title as to each of the 80 acres constituting the quarter section of land on two separate alleged oral contracts.

By amended petition, plaintiffs allege that Samuel E. Howard and Susie E. Howard (nee Curry) were married September 10, 1896; that prior to their marriage they had planned to move to Texas to make their home; that William B. and Matilda A. Howard orally proposed to Samuel and Susie, at the time of their

marriage, that if they would forego their proposed removal to Texas, come into the home of William B. and Matilda A. Howard, minister to the needs of Matilda A. Howard, who was in ill health, keep house for William B. Howard, and cultivate the farm, they, William B. and Matilda A. Howard, would give to Samuel E. and Susie E. Howard the east half of said quarter section of land; that in consideration thereof, Samuel E. and Susie E. Howard, after their marriage, orally accepted the proposal and moved into the home of William B. and Matilda A. Howard, which at that time was located on the east 80 acres; that the farm was then divided and the east 80 acres thereupon became the property of Samuel E. and Susie E. Howard and is now the property of Susie E. Howard as grantee and of the other plaintiffs as the heirs and descendants of Samuel E. Howard; that Samuel E. Howard, Susie E. Howard, his surviving wife, and their children have been at all times and now are in the exclusive, open, and hostile possession of the land.

As to the west 80 acres of the quarter section, plaintiffs allege that sometime prior to 1907, a post office named Marvin was established on and near the southwest corner of the farm; William B. Howard was appointed postmaster; thereafter William B. and Matilda A. Howard, desiring to build a new house on the west 80 acres near the post office, it was agreed between William B. Howard and Samuel E. and Susie E. Howard, for the purpose of obtaining additional funds for the building of such house, a loan would be secured upon the whole farm, whereupon a loan of $1,200 was procured by William B. and Matilda A. Howard; Samuel E. and Susie E. Howard consented, and it was orally agreed between William B. and Matilda A. Howard, on the one part, and Samuel E. and Susie E. Howard, on the other, that in consideration of the long, faithful and affectionate care of Matilda A. Howard and William B. Howard, and the assumption of liability for the mortgage debt and the payment of all interest and principal charges

thereon in the future by Samuel E. and Susie E. Howard, the entire 160 acres would become the property of Samuel E. and Susie E. Howard; that Samuel E. and Susie E. Howard orally assumed the obligation of the mortgage debt and under the agreement took possession of the west 80 acres in addition to the east 80 acres; that they have ever since been in the exclusive possession of the whole farm. Thereafter Samuel E. and Susie E. Howard placed valuable improvements on the land, paid taxes and interest on the loan and made payments on the loan prior to the deaths of William B. Howard and Matilda A. Howard; about December 18, 1918, Samuel E. Howard died, and thereafter William B. and Matilda A. Howard recognized Susie E. Howard and the children of Samuel E. Howard as the owners of all of the land and many times promised and agreed to execute a proper deed conveying the land to them; that William B. Howard died on April 11, 1924, and on April 22, 1924, there was filed and recorded in the office of the county clerk a warranty deed purporting to have been executed by William B. Howard, conveying all of said land to "Mathilda" A. Howard, dated February 10, 1919, and reciting acknowledgment of the deed on October 26, 1921, before Martin Deister, a notary public; that the deed is a forgery, but that if the deed was prepared by or known to William B. and Matilda A. Howard, it was intended to run to and in the name of Susie E. Howard, and that the name of "Mathilda", which is not the name of any member of the Howard family, was maliciously and corruptly inserted therein, and that said purported deed was never delivered to Matilda A. Howard before or after the same was recorded; that the deed is also void for the reason that if said land was then the homestead of William B. and Matilda A. Howard, which plaintiffs deny, the deed was not the joint conveyance of the purported grantor and his spouse as provided by section 9661, O. S. 1931, and section 2, art. 12, Constitution; that said deed is void for the further reason that said land was of the reasonable

value of $100 per acre and that the stated consideration, and only consideration, for said land is the $1 named in the deed, so that the deed was wholly without consideration, and void for the further reason that no U. S. revenue stamp was attached.

The petition then pleads the existence of record of five mineral deeds, purported to have been executed by Matilda A. Howard, conveying the mineral interest in the land to various parties as follows: One, dated May 5, 1924, conveyed to C. B. Billington an undivided 1/2 interest in and to all the oil, gas, and other minerals in and under and that may be produced from said land, with right of ingress and egress for the purpose of mining, drilling, and exploring said land for oil and gas and other minerals; a like deed, dated May 6, 1924, conveying an undivided 1/4 interest in and to the oil, gas, and other minerals in and under said land, to B. H. Rowlett; a like deed, dated June 5, 1924, conveying an undivided 1/8 interest in the oil, gas, and other minerals to B. H. Rowlett; a like deed, dated June 20, 1924, conveying an undivided 1/16 interest in and to the oil, gas, and other minerals to W. J. Malone; and a like deed, dated July 15, 1924, conveying an undivided 1/16 of all the oil, gas, and other minerals to John Morgan and J. L. Fortson. It was then alleged that all of said mineral deeds are void for the reason that they were forgeries or that, if signed by Matilda A. Howard, then she was not mentally competent and that she was not the owner of the land and had been out of possession thereof for more than 15 years.

The petition also pleaded a quitclaim deed to the land, dated October 15, 1926, by Matilda A. Howard to P. K. Norris; that the quitclaim deed is void for the reason that Matilda A. Howard had no right to sell said land in that it was then the homestead of Susie E. Howard and the children of Samuel E. Howard, deceased; that if said deed was signed by Matilda A. Howard, she was entirely devoid of understanding the nature of her act and that no consideration was paid for said deed.

The petition further alleges the existence of record of a mortgage, dated November 19, 1924, whereby Matilda A. Howard mortgaged said premises to W. S. Bicknell to secure her note in the sum of $530; that said mortgage was void for the reason that it was not executed by Matilda A. Howard, and if it was signed by her, she was without proper understanding and capacity to understand the nature of her acts and was without legal right to mortgage the land.

The petition then alleged that the other named defendants claim some right, title, or interest in the land, but whatever interest they claim was derived through and under the aforesaid void instruments or some of them and constitute a cloud upon plaintiffs' title.

The petition then alleges that in 1937 the Stanolind Oil & Gas Company and Amerada Petroleum Corporation wrongfully, by force, entered upon a portion of said land, drilled a well and discovered and produced, removed, and sold large quantities of oil and gas therefrom of the value of $300,000, under claim of right derived through the aforesaid void instruments.

A judgment was sought canceling all alleged void instruments of record and for judgment against Stanolind Oil & Gas Company and Amerada Petroleum Corporation in the sum of $300,000, and for the ouster of the Stanolind Oil & Gas Company and Amerada Petroleum Corporation from the premises.

The Stanolind Oil & Gas Company and Amerada Petroleum Corporation rely upon an oil and gas lease dated July 28, 1932, executed by C. B. Billington and numerous other holders of royalty or mineral interests, all derived from or under the several mineral deeds executed by Matilda A. Howard, in 1924, to W. O. Allen and assigned by Allen to Stanolind and Amerada December 5, 1932, and mineral deeds from C. B. Billington and W. O. Allen, who de-

rived their interest under mineral deeds executed by Matilda A. Howard. All other defendants claiming royalty or oil and gas interests in the land likewise claim directly or indirectly under the mineral deeds.

All defendants denied generally the allegations of plaintiffs' petition as to the gift to or purchase of said land by Samuel E. and Susie E. Howard from William B. and Matilda A. Howard, and denied that Samuel E. Howard, Susie E. Howard, or any of plaintiffs ever paid the interest and principal of the $1,200 mortgage debt, or that they paid the taxes on said land except for certain years after this action was commenced.

Defendant P. K. Norris asserts the validity of his quitclaim deed and claims ownership of the surface rights. He denied generally all the allegations of plaintiffs' petition attacking the validity of his deed.

Plaintiffs demanded trial by jury, but were denied. Plaintiffs sought changes of trial judge. Judge Pittman granted a change from him and assigned the cause to Judge Kenneth Jarrett. Plaintiffs then sought a further change for alleged bias and prejudice of Judge Jarrett, and were denied.

At the close of the evidence, the court rendered judgment for defendants, quieted title of the Stanolind and Amerada, quieted title to the surface rights in defendant P. K. Norris, and quieted title in all the other mineral claimants subject to the oil and gas lease of Stanolind and Amerada. Plaintiffs appealed.

Plaintiffs first contend that the court erred in denying them a jury trial. Primarily, this is an action wherein plaintiffs seek to establish title to real estate based upon an alleged oral contract of conveyance or agreement to convey, and to cancel and set aside deeds of conveyance hostile to plaintiffs' alleged title. Plaintiffs assert they are and have been in exclusive possession of the land; the east 80 acres since about September, 1896, and the other 80 acres since about 1907.

The right to a trial by jury is determined by the character of the issues framed by the pleadings. Estes v. Oklahoma City, 175 Okla. 278, 52 P. 2d 873; Okmulgee Producing & Refg. Co. v. Wolf, 88 Okla. 188, 212 P. 415; O'Quinn v. Motaff, 85 Okla. 215, 205 P. 498.

It is well settled that an action, the primary purpose of which is to set aside deed conveying real estate and obtaining a decree reinvesting title in plaintiff, is one of equity and in such action neither party is entitled to a jury. Stow v. Bruce, 178 Okla. 127, 61 P. 2d 1043.

In Evans et al. v. Local Building & Loan Ass'n, 169 Okla. 274, 36 P. 2d 895, it is held:

"Where in an action the paramount issue, as formed by the pleadings, is one of equitable cognizance involving the cancellation or avoidance of a deed, the right to a jury trial is not given by statute, even though the right to the possession of the property may become incidentally involved."

See, also, Moschos v. Bayless, 126 Okla. 25, 258 P. 263. There was no error in denying jury trial.

Plaintiffs assign as error refusal of the trial judge to disqualify on the ground of alleged bias and prejudice. This assignment is not urged in the brief and might well be treated as abandoned. However, it appears that the principal objection of plaintiffs to trial before both Judge Pittman and Judge Jarrett was that each of said judges disagreed with counsel for plaintiffs on their claim of right to a jury trial. No showing has been made as to any other ground of disqualification. Certainly there is nothing in the record indicating prejudice or bias against plaintiffs on the part of the trial judge.

It is next contended that the decision of the court is not sustained by the evidence and is contrary to the great weight and preponderance of the evidence, and in contrary to law.

In this connection it is asserted that the trial court erred in refusing to consider the uncontradicted evidence of plaintiffs that Susie E. and Samuel E. Howard, on or about September 10, 1896, acquired title to the east 80 acres of the land here involved, in consideration of their abandoning their intention to move to Texas and agreeing to support the parents of Samuel E. Howard, etc. On this question, all the parties apparently overlooked the vital question of the power of William B. and Matilda A. Howard to make the alleged transfer of title at that time. The uncontradicted evidence and admitted facts show that William B. Howard, sometime prior to 1896, entered the quarter section of land here involved under the U. S. Homestead Act, and that final proof was not made until June 10, 1899; that patent was not issued until November 20, 1899. Sections 2289, 2290, and 2291, Rev. Stat. U. S. (U. S. Comp. Stat. 1901) were in effect at that time. Section 2290 required any person applying to enter land under section 2289 to first make and subscribe, before a proper officer, and file in the proper land office, an affidavit that such application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person, persons, or corporation. Section 2291 required a homestead entryman, when making his final proof, to make and subscribe an affidavit that no part of said land has been alienated except as provided in section 2288, which exception provided for sale and warranty as against acts of the entryman only for church, cemetery, or school purposes, rights of way for railroads, canals, reservoirs, or for ditches for irrigation or drainage.

Contracts of the nature of the one here contended for have been before the courts in a number of cases. The direct question was involved in Harris v. McCrary et al., 17 Idaho, 300, 105 P. 558. Therein it was held:

"Under the provisions of section 2290 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1389), any agreement, oral or written, whereby the homestead entryman agrees to convey a part of the homestead is absolutely void and not enforceable."

"Held, that a void contract to convey a part of the homestead could not be validated by an oral agreement to convey in conformity with such contract, after patent has been received."

See, also, Moore v. Moore, 130 Cal. 110, 62 P. 294; Pacific Livestock Co. v. Gentry, 38 Ore. 275, 61 P. 422 (on rehearing, 65 P. 597). This is the rule in Oklahoma. Wheeler et al. v. Widener et al., 75 Okla. 292, 183 P. 407.

We call attention to this by reason of what is said in Harris v. McCrary, supra. Therein it is said:

"Courts have held that if the illegality of the contract sued on appears from the testimony, although not pleaded in the answer, the court of its own motion ought to dismiss the action."

Under the above statutes and decisions, plaintiffs did not and could not acquire title to or any interest in the east half, or east 80 acres, of the land here involved on or about September 10, 1896, or any other time prior to June 10, 1899.

As to the west 80 acres, plaintiffs claim title based upon the alleged agreement to assume and the payment of the mortgage debt of $1,200. There is no convincing, competent evidence to establish this alleged agreement. There is no evidence that a mortgage of $1,200 was executed by William B. and Matilda A. Howard in 1907. Susie E. Howard testified that there was such a mortgage and that she signed it, but that Samuel did not sign. No such mortgage was shown to have ever been in existence. There is evidence that on December 19, 1904, William B. and Matilda A. Howard executed a mortgage for $1,200 to J. F. Hubbard, but Susie E. Howard did not sign that mortgage. The evidence shows the new house was built about 1905 or 1906. There is some evidence that Samuel E. Howard, or Susie E. Howard, or both, paid some of the taxes on the land dur-

ing the period from about 1910 to about 1921. However, such tax receipts as were introduced in evidence covering that period show that the taxes were paid by William B. Howard except for the year 1913, paid October 8, 1914, which shows taxes for that year were paid by "Mrs. W. B. Howard". The $1,200 mortgage to J. F. Hubbard was not released until November 17, 1919. The record shows that on November 3, 1919, William B. and Matilda A. Howard executed a mortgage covering the entire 160 acres to the Federal Land Bank of Wichita, Kans., to secure a $1,200 note, thus indicating that the mortgage to the Federal Land Bank was for the purpose of procuring money to take up and discharge the $1,200 mortgage to Hubbard. The record shows that all the payments of interest and principal which were made on the $1,200 mortgage to the Federal Land Bank were made by Wm. B. Howard, Mrs. W. B. Howard, or the holders of the mineral deeds executed by Matilda A. Howard. The evidence as a whole shows that if the oral agreement contended for by plaintiffs as to the west 80 acres was made, Samuel E. and Susie E. Howard wholly failed to perform their part of the agreement for the payment and discharge of the $1,200 mortgage debt.

In a record such as is before us, it is impossible to set out and review the evidence in detail. In this case there is much testimony, by many witnesses, some interested and some apparently disinterested, tending to prove plaintiffs' asserted contracts, consisting for the most part of alleged statements by William B. and Matilda A. Howard to the effect that they gave or had sold the land here involved to their son, Samuel E. Howard, and his wife, Susie E. Howard.

Substantially all the authorities agree that oral testimony of oral statements against interest, made by deceased persons, is the weakest of all evidence. Especially is this true as to alleged oral statements made by persons many years deceased. Fagan et al. v. Fisher, 74 Colo. 473, 222 P. 647.

In Mattingly v. Pennie, 105 Cal. 514, 39 P. 200, it was said: "No weaker kind of testimony could be produced".

In Austin v. Wilcoxson, 149 Cal. 24, 84 P. 417, in considering such testimony, the court said:

"It is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory."

See, also, Anno. 69 A.L.R. 183-196.

However weak, this testimony standing alone might well be sufficient to establish the contracts. But there is much testimony contrary to plaintiffs' claim, particularly as to the mental capacity of Matilda A. Howard at or about the time of the execution of the various instruments which plaintiffs assail. The evidence conclusively refutes plaintiffs' claim that the deed and mineral deeds appearing to have been executed by her were forgeries. These were all duly acknowledged before notaries public and there is much direct and positive evidence of witnesses who testified that they saw her sign the several instruments. There is not a word of testimony that her signatures appearing thereon are not genuine. The uncontradicted evidence shows that William B. and Matilda A. Howard lived on the land continuously from long before September 10, 1896, to the date of death of William B. Howard in 1924, and that Matilda A. Howard continued to live on the land until after October 15, 1926, the date of the deed from Matilda A. Howard to P. K. Norris. From about 1905 or 1906 until his death, William B. Howard conducted a small country store near the southwest corner of the land. He was also postmaster of the post office maintained on said land. The evidence also shows that Samuel E. and Susie E. Howard moved into the house on the east 80 acres soon after their marriage, where they, and later their children,

lived with William B. and Matilda A. Howard until the new house was built on the west 80 acres, when they all moved into the new house and continued to live there until the date of death of Samuel E. Howard in 1918, and that Susie E. Howard and her children continued to live there with William B. Howard until his death, and with Matilda A. Howard until shortly after October 15, 1926, when Matilda A. Howard and Susie E. Howard and her unmarried children moved to McComb, Okla., where they continued to live until the death of Matilda A. Howard in 1937, and where Susie E. Howard still lives.

The record shows that between June, 1899, and September 27, 1922, William B. and Matilda A. Howard, as owners, executed at least nine written instruments affecting the title of said land, consisting of five mortgages, two oil and gas leases, and one pipe line right of way, and that William B. Howard alone executed one mortgage. Three of these instruments were dated after the alleged agreement as to the east 80 acres and six were executed after the date of the alleged agreement as to the west 80 acres. All are directly in conflict with any thought that William B. and Matilda A. Howard had sold, or contracted to sell, any interest in said land to Samuel E. and Susie E. Howard. Likewise, the deed from William B. Howard to "Mathilda" A. Howard is opposed to the idea that William B. Howard had conveyed any interest in the land to Samuel E. and Susie E. Howard. All were executed while they were living upon the land, with the legal title in William B. Howard and with apparent full authority to sell and convey.

All the mineral deeds of Matilda A. Howard and the quitclaim deed from Matilda A. Howard to P. K. Norris were executed while Matilda A. Howard was living on the land with the legal title in her and with apparent authority to execute same.

There is some contention that the deed from William B. Howard to Matilda A. Howard is void because if it was the property of William B. Howard it comprised his homestead and William B. Howard alone was without authority to convey any interest therein. The Constitution provides that the owner of the homestead, if married, cannot sell the same without the consent of his or her spouse given in such manner as may be prescribed by law. Conveyance of the homestead from one spouse to the other is not a sale of the homestead within the meaning of section 2, art. 12, Constitution, and is valid though signed only by the spouse holding the legal title. Hall v. Powell, 8 Okla. 287, 57 P. 168; Furrow v. Athey, 21 Neb. 671, 33 N. W. 208; Brooks v. Butler, 184 Okla. 414, 87 P. 2d 1092. The authorities cited by plaintiffs on this question involve sales or transfers of the homestead to persons other than the spouse of the owner, and are not applicable to the facts here involved.

There is some contention that Samuel E. and Susie E. Howard and their children had open, notorious, and adverse possession of the land for more than 15 years, so as to acquire title by prescription. The record does not sustain this contention. Samuel E. and Susie E. Howard never had exclusive possession of the premises. At most, they only had joint or mixed possession with William B. and Matilda A. Howard until the death of Samuel E. Howard. Susie E. Howard thereafter held joint or mixed possession with William B. and Matilda A. Howard until the death of William B. Howard, and thereafter with Matilda A. Howard until both moved from the premises to McComb. No member of the family was in possession for about two years, 1928 and 1929.

Adverse possession, in order to ripen into title, must be exclusive. "Exclusive possession" means that the disseizor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit. Two

persons cannot hold one piece of property adversely to each other at the same time, and where two persons have entered upon land, he who has the better title will be deemed to be in possession thereof. It is therefore essential that the possession of one who claims adversely should establish as an ouster of the true owner because in the absence of ouster, the title draws to itself the continuous possession of the property. Possession not amounting to disseizin is insufficient. 1 Amer. Jur. 875-876.

Where the possession of land is mixed, the legal seisin is according to the legal title. Deputron v. Young, 134 U. S. 241, 33 L. Ed. 923.

The judgment of the trial court is not clearly against the weight of the evidence; it is not contrary to law.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.