**L. D. TOWNSEND et al., Plaintiffs in Error,**

v.

**CREEKMORE–ROONEY COMPANY, a co-partnership composed of Thomas A. Creekmore, now deceased, and L. F. Rooney, et al., Defendants in Error.**

No. 37640.

Supreme Court of Oklahoma.

Nov. 12, 1958.

**36**

P. D. Erwin, Chandler, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendants in error.

PER CURIAM.

This action was initiated by plaintiffs in error, plaintiffs below, against defendants in error, defendants below, to cancel an oil and gas lease on the N½ of the NE¼, and the SE¼ of the NE¼, Section 5, Township 13 North, Range 6 East, I. M., Lincoln County, Oklahoma, and to recover royalty payments under the lease alleged to have been lost to lessors by reason of drainage permitted by the lessees. Trial was to the court, and the defendants' motion for judgment at the conclusion of plaintiffs' evidence was sustained. Plaintiffs' motion for a new trial was denied and they have appealed. We shall continue to refer to the parties by their trial court appellation.

Plaintiffs' petition filed in August, 1955, alleged their ownership of the mineral estate in the described property and defendants' ownership of leases to that property executed by plaintiffs in March, 1950, for a primary term of two years. It was also alleged that defendants had drilled two wells on the premises; one on the SE¼ of the SE¼ of the NE¼, and the other on the NW¼ of the NW¼ of the NE¼. As grounds for cancellation, plaintiffs alleged that these two wells "were not drilled, completed and operated" in a proper manner; that they "have not been operated and managed" in a proper manner and have "produced very little, if any, gas since" August 1, 1954; that off-sets to both wells have produced in commercial quantities; that defendants have failed to protect the leasehold by drilling off-set wells to commercial producers on adjacent property; that defendants have failed to fully develop the leases as a reasonably prudent operator would have done; that plaintiffs have made a written demand for further development with which defendants have failed to comply. Plaintiffs' petition concluded with an allegation that they had been damaged by loss of their royalty by drainage from the property to off-set wells on other property. Defendants controverted all these allegations and alleged that they had operated as a reasonably prudent operator; that they have sufficiently developed the premises; and that they had complied with all the provisions of the leases.

One of the assignments on appeal is that the court erred in denying plaintiffs' demand for a jury trial. Whether or not a jury trial was necessary depends primarily upon the nature of the issues made by the pleadings. Howard v. Stanolind Oil & Gas Co., 197 Okl. 269, 169 P.2d 737; Russell v. Freeman, 202 Okl. 421, 214 P.2d 443; Brewer v. Baker, Okl., 283 P.2d 203. The foregoing brief résumé of the plaintiffs' petition demonstrates, we believe, that the primary relief sought in this action was cancellation of the lease for breach of its provisions, and that the additional demand for damages for drainage from the leased premises is merely incidental to and dependent upon that action. This was our conclusion in a similar action. Ferguson v. Gulf Oil Corporation, 192 Okl. 355, 137 P.2d 940. Where the primary relief sought is cancellation

of a lease, a jury trial is not mandatory. Brewer v. Baker, supra.

On the merits of the action, it appears from the evidence that production in this area is from the Prue sand at around 3000 feet. The well spacing unit is ten acres. The greatest production of oil from this sand is from wells west of plaintiffs' property. Wells east from plaintiffs' land have produced mostly gas or have been dry holes. The expert opinion testimony established that the Prue sand varied in thickness from almost nothing in the NE corner of plaintiffs' property to a depth of approximately 90 feet in the NW¼ of this section, west from plaintiffs' property, and that the west and southwest corner of plaintiffs' property have a sand depth of 40 feet or more. All but three of the possible locations west and south of plaintiffs' land have been drilled and production obtained. The southeastern-most location on plaintiffs' property was drilled first. The second well was drilled in 1952 in the northwestern-most location. Each well has produced gas and some oil. One of the plaintiffs testified that when he inquired of an official of one of the defendants concerning additional development, the official told him "they had spent too much money and just wasn't interested in spending any more down there." Plaintiffs' expert witness testified that there were two or three locations on plaintiffs' land at which oil might be found. These locations were off-sets to producing wells on the adjacent premises. He also testified that there had been some drainage to these adjacent wells from plaintiffs' property. The expert was unwilling, however, to state an opinion as to the possibility of producing any commercial wells on plaintiffs' land. Plaintiffs also introduced evidence to establish the extent of production of oil and gas from the premises on their west, as well as the amount of oil and gas produced from the two wells on their own property. More important, however, the following was unequivocally established. The two wells on plaintiffs' property were completed as commercial producers, and gas and some oil were sold from the leases until November, 1954. No oil or gas was sold from the leases from November 23, 1954, until seven months after this action was filed, when runs from each well for approximately two weeks in March, 1956, were sold and plaintiffs paid royalties for that production. The leases here involved contain the usual clause providing that the lease shall extend beyond the primary term of two years for "as long thereafter as oil or gas, or either of them, is produced." The leases also have provisions requiring the lessees to pay the lessors monthly their part of the proceeds from the sale of gas, and to deliver to the credit of the lessors their part of the oil produced. The leases contain no shut-in royalty payment provisions.

In view of the undisputed, unequivocal evidence hereinabove noted concerning the unexplained cessation of marketing of oil or gas from these leases, we do not find it necessary to discuss the facts in relation to the implied covenant of further development or the effect of any drainage to adjacent leases.

A lessee has only a limited estate following the expiration of the primary term of an oil and gas lease containing a "thereafter" clause. Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876. This estate arises, and its continuance hinges, upon the discovery of oil or gas and its production in paying quantities prior to the expiration of the primary term of the lease. The lease terminates by its own provisions when oil or gas are no longer produced after the primary term, except where there are equitable considerations which justify a temporary cessation of production. Brown v. Shafer, Okl., 325 P.2d 743. Thus, if the unexplained failure to market oil or gas from this property was due to the lessees' failure to produce oil or gas, a fact not explicitly disclosed by the evidence but one not unreasonably to be concluded from the circumstances and the provisions of the leases, these leases may have terminated by virtue of their express provisions. But without further discussion of this possibility, the

unexplained cessation of marketing of oil or gas from the leases for an extended period of several months is prima facie sufficient to justify cancellation.

■ Necessarily incident to and implied from the contractual responsibility to produce oil and gas in paying quantities, the lessee has the additional duty to market the oil and gas produced from the lease. Strange v. Hicks, 78 Okl. 1, 188 P. 347, McVicker v. Horn, Robinson and Nathan, Okl., 322 P.2d 410. A failure to fulfill this implied covenant may be sufficient to justify cancellation of the lease. Fox Petroleum Co. v. Booker, 123 Okl. 276, 253 P. 33. Yet the lessees' responsibilities in this regard are not absolute, and, as in the case of a failure to market prior to the expiration of the primary term through no fault of the lessees, reasonably diligent efforts under all the circumstances are sufficient. Cancellation will not be decreed where there are equitable considerations excusing the lessees' default. But considerations of that nature do not appear in the plaintiffs' evidence, and the period of cessation here involved is unreasonable in the absence of some justification. McVicker v. Horn, Robinson & Nathan, supra.

■ In this action the trial court rendered judgment for the defendants upon the defendants' motion at the conclusion of the plaintiffs' evidence. In this it erred. Under these circumstances we have held that the proper disposition is to reverse the judgment and grant the plaintiffs a new trial so that all the evidence might be introduced. Modern Woodmen of America, Camp No. 6967 v. Tulsa Modern Woodmen Bldg. Ass'n, Okl., 264 P.2d 993.

The judgment is reversed and remanded with directions to grant plaintiffs a new trial.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.