Otis GARRETT and Maurice Seigle,
Plaintiffs in Error,

v.

R. L. DEAN, Everett Earl Cottrell, Thomas Ray Pyeatt, George R. Pyeatt, Nellie Mankin, Elizabeth Maud Davis, Mary Kroph Ponder, now Read, Beatrice Bradfield, Lillie B. Williams and Nancy Lee Worley Phelps, Defendants in Error.

No. 41398.

Supreme Court of Oklahoma.

Dec. 5, 1967.

Robert H. Vaughn, Oklahoma City, for plaintiffs in error.

C. H. Bowie, Pauls Valley, for defendants in error.

PER CURIAM:

This action was commenced by Plaintiffs, R. L. Dean, Everett Earl Cottrell, Thomas Ray Pyeatt, George R. Pyeatt, Nellie Mankin, Elizabeth Maud Davis, Mary Kroph Ponder, now Read, Beatrice Bradfield, Lillie B. Williams, and Nancy Lee Worley Phelps against Otis Garrett, Maurice Seigle, Paul Edwin Livingston, Victor L. Herrin, County Treasurer of Garvin County, State of Oklahoma, and The Board of County Commissioners of Garvin County, State of Oklahoma, by filing a petition to quiet title against the defendants on a 40 acre tract described as the South Half of the South Half of Northeast Quarter of Section 26, Township 3 North, Range 2 East in Garvin County, Oklahoma.

Everett Earl Cottrell was alleged to be the owner of the surface only of the land with the oil, gas and other minerals being owned by R. L. Dean, an undivided one-half interest, Thomas Ray Pyeatt, an undivided ¾₀ths, and George R. Pyeatt, Nellie Mankin, Elizabeth Maud Davis and Mary Kroph Ponder, now Read, each having an undivided ⅛₀th interest in said minerals, and Beatrice Bradfield, Lillie B. Williams, and Nancy Lee Worley Phelps each owning an undivided ⅛th interest in said minerals.

After various motions Otis Garrett filed his answer claiming ownership in fee simple of the surface of the lands in question and an undivided one-half interest in the minerals by reason of a County Treasurer's Certificate Tax Deed dated October 30, 1947, and filed same date with the County Clerk of Garvin County, Oklahoma; and Maurice Seigle answered that he claimed an undivided one-half interest in the minerals by reason of a Mineral Deed from the defendant, Otis Garrett, dated March 29, 1958, and filed of record in Garvin County, Oklahoma.

At the trial of the action the parties stipulated that the Certificate Tax Deed relied on by the defendants was void from inception and that the defendants claimed that the deed had ripened into a good deed by possession which fact of possession was to be left to the Court. The Court, after hearing the case, asked for written briefs and after consideration and continuation to a later date ruled that the ownership was as set forth in the plaintiffs' petition, that the Tax Deed was void and should be cancelled and that R. L. Dean and Everett Earl Cottrell be required to tender to Otis Garrett all taxes, penalties and costs paid by Garrett after deducting $125.00 rental collected by Garrett as rentals during the years. From this judgment defendants appeal. Parties are referred to herein as they appear in the trial court.

The evidence of possession as presented by the defendant, Otis Garrett, appears from his testimony as follows: That Garrett first saw the land in the winter of 1947–48, soon after he received his Tax Deed; that it was unoccupied land, with fence almost all down, pretty thickly covered with native timber and only signs of a house of years ago. In the next six years, he testified, he was on the land two additional times before he rented the property in 1954 to a Mr. Lewis under a ten year lease. Mr. Lewis paid $25.00 and was to pay $25.00 the following January and each additional year thereafter, but never made any future payments. In 1958, Garrett testified, he contacted Mrs. Lewis who advised him they were not using the place and did not want the lease.

Mr. Garrett testified, "I claim I have had possession of it ever since I got it; within two months after I got it I put a sign on it 'For Rent' posted on a post by the land in the latter part of December in '47 or early in '48. I think that was possession." * * "There was no one I could find that would tell me that he had anything to do with the land—the only thing I saw on it was a goat." That in August of 1958 a man by the name of Cottrell got in touch with Garrett and leased the farm and that different parties related to Cottrell, a son or grandson, used the land thereafter and paid on such lease until 1962 when tenant was dispossessed, the fence cut, and his cattle put out in the road. When tenant paid the 1962 rental, Garrett agreed to refund this rental if he could not get possession from Cottrell's nephew who claimed to have purchased the land in 1961.

Arthur Cottrell testified that land was leased in his father's name, but that he "more or less" took it over and used the place after his father died in '58 or '59. That "anyone (apparently meaning members of his father's family) is liable to have had some stock in there during this time" and that he himself "paid the rent on it twice." That he took his stock off the last time in early 1962. That he wasn't sure whether he had ever had any cattle on the place, but that he kept his horses a week or two weeks at a time or a month sometime during the year. That the property was occasionally vacant. That Everett Earl (Cottrell) who bought the place in December of 1961 was his nephew.

D. E. Lewis testified that he leased the property in 1951 for 1952 and 1953 from Plaintiff, Mr. Dean, and that he made a lease with Dean for 1952 to 1955; that he let the place go in 1955 when he sold his cattle. That he also signed a lease with

Mr. Garrett on June 7, 1954. Asked concerning the leases, he testified:

"Q. Now, who did you actually recognize as the real owner, Mr. Dean or Mr. Garrett?"

"A. Well, I figured Dean was. If I hadn't, I wouldn't have dropped the lease on him and went back to Dean with it."

"Q. Why did you take the lease from Mr. Garrett?"

"A. Well, he just come down there and had me really shook up, and I didn't really know, is the reason."

"Q. You just took it and didn't know?"

"A. That's right, but then I went back and leased it from Dean."

"Q. Now do you know there wasn't anybody on the property or had it leased under you for the year of '56, '57, or '58?"

"A. It was open, yes."

"Q. Do you know whose stock run in there?"

"A. Well, just about everybody's, I guess."

"Q. What was the condition of the fence?"

"A. Well, there wasn't much fence to it."

Everett Earl Cottrell testified that he lived a mile and a quarter from the farm in question and that he had bought it for $1,000.00 from Mr. Dean. That Mr. Lewis used the place and "just about everybody" used the land during 1956, 1957, and 1958, after that as wide open range. That during that time he had a horse or two that ran on the place, and his daddy used it for his cows. That he took possession after his purchase in December, 1961. That he told Arthur Cottrell he had bought it and wanted possession and turned Arthur's horse out on the road and shut the gate. That witness turned Arthur Cottrell's horses out in about January, 1962.

Mr. Dean testified that he had been in possession since the '40's. That a man named Kimbrough lived in the house and rented the place. That after Kimbrough left, the door and windows were gone and he sold the house for $75.00 or $100.00. That he then rented the land to a man named Helm for two or three years. That a Mr. Readnour rented it a year or two and paid rent, and that Dean then rented the place to D. E. Lewis, Jr. in 1952 and that Lewis used it through 1955, and that he thought Lewis was using the place through 1958, but later found out he had moved off and left it. That he had made repeated attempts to pay his taxes, but Treasurer told him they were paid by Garrett.

The trial was predicated upon the following stipulation: "It is stipulated and agreed by the parties hereto that the Certificate Tax Deed is void from inception but is claimed to have ripened into a good deed by possession, which (question of) possession is left to the Court." Under the stipulated facts herein, the Tax Deed having been void at the time it was executed, the question here presented is solely the matter of who was in possession of the premises from the date of the recording of the void Tax Deed and whether the defendants could establish the adverse possession required since they had no right, title, or interest in the land so deeded, unless it is by occupancy of the latter under color of title or claim of right for the period provided for by statute after which the record owner may not maintain an action to question the validity of the Tax Deed.

The court, after hearing evidence concerning possession, quieted title in the plaintiffs and against the defendants, and gave judgment to plaintiff for rentals which had been collected by the defendant, Garrett.

■ In Kimble et al. v. Allen et al., Okl., 298 P.2d 1042, the court held:

"While the tax deed transmits no title, because it is void, it is sufficient color of title in Oklahoma to support an adverse possession to the property therein described. * * *"

Much of the testimony here was directed to show the split possession of the parties in which for one year both plaintiff and defendant rented to the same tenant. In Howard et al. v. Stanolind Oil & Gas Co. et al., 197 Okl. 269, 169 P.2d 737–744, this court held that:

"Adverse possession, in order to ripen into title, must be exclusive. 'Exclusive possession' means that the disseizor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit. Two persons cannot hold one piece of property adversely to each other at the same time, and where two persons have entered upon the land, he who has the better title will be deemed to be in possession thereof. It is therefore essential that the possession of one who claims adversely should establish as an ouster of the true owner because in the absence of ouster, the title draws to itself the continuous possession of the property. Possession not amounting to disseizin is insufficient."

In Shellenberger et al. v. Hicks (1961), Okl., 370 P.2d 292, this court held:

"In order to apply 12 O.S.1951 § 93, in bar of an attack upon a void tax deed, it must be shown by the evidence that the holder thereof has recorded his tax deed and has been in possession of the land therein described for five continuous years."

and citing with approval the rule, ———

"When the land is vacant, the constructive possession is in the valid title holder. * * *"

and that the type of possession must be " * * * under the same conditions as have been applied in cases involving adverse possession under the fifteen year statute." This injects the question of continuity into the adverse possession as cited by this court in Anderson v. Francis et al. (1936), 177 Okl. 47, 57 P.2d 619, 620 in first paragraph of the Syllabus:

"Title to land cannot be acquired by adverse possession unless the possession is open, notorious, hostile, and exclusive, and it is also essential that such possession, in order that it may ripen into title, should be shown to be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual, because as soon as, and as often as, a break occurs the law restores the constructive possession of the owner."

Under this rule the defendant, Garrett, had the burden of proving his exclusive and uninterrupted possession for a full five year period.

Although there is some confusion about dates of possession, there are several definite times which serve to establish cut off periods in such adverse claims of the defendant, Garrett, against the record owner, Dean. It will help clarify the situation to establish a few of these.

Viewing the evidence in the light most favorable to the defendant, Garrett, we notice that the most that he was able to establish toward proving his possession of the property in question was that on three occasions between October 30, 1947, and August, 1954, he posted "For Rent" signs on the property. There was no indication that these signs were kept there continuously so that, even if we were to assume the posting of signs amounted to the required "possession", we could not consider such evidence sufficient to sustain a claim of continuous possession of the subject property.

■ It was affirmatively shown by Garrett that he paid the taxes on the property for more than five of the years since recording his deed. However, we have held that such is not a controlling circumstance " * * * but it is one of the means whereby a claim of ownership is asserted, * *." Anderson v. Francis et al. (1936), 177 Okl. 47, 57 P.2d 619.

■ Garrett testified that during this time he "occasionally" visited the property. Such "visits" are certainly not sufficient to

fulfill the requirements of continuous possession of the property. In 1954, Garrett and Lewis entered into a written lease and the latter paid $25.00 to Garrett for the first year's rent. Garrett himself testified that he did not know whether Lewis had abandoned the property or not, but in 1958 he discovered that the property was not needed by the Lewises and they wished to be relieved of the lease. Garrett did not establish for how long prior to that time the property had not been used by the Lewises. In 1958, another written lease for five years was entered into and the rentals were paid thereunder. The possession under this lease of Garrett's tenants began in August, 1958, and terminated with the removal of the tenants' horses from the property in about January, 1962—a period of less than four years. This last mentioned period is the only continuous period during which Garrett, through his tenants, exercised dominion or control over the property.

■ The burden of proof in this case was upon the defendant, Garrett, to show that he was in the open, notorious, hostile and continuous possession of the subject property under color of title (his recorded tax deed) for at least a period of five (5) years before he could rely, as his defense, upon the bar of limitations provided by 12 O.S. 1951, § 93. Kizzire et al. v. Sarkeys (1961), Okl., 361 P.2d 1082. Shellenberger v. Hicks, supra.

Defendant has urged that the plaintiff could not maintain this action to quiet title to the subject property because he did not allege and prove that he was in possession of the property at the commencement of the action as required by 12 O.S.1951, § 1141. That statute provides:

"An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession. * * *"

■ We find, upon reviewing the evidence, that the defendant's lessee, by whom defendant was exercising his dominion and control over the subject lands, voluntarily vacated the premises upon learning of the sale thereof to the plaintiff, Everett Earl Cottrell. The latter then took possession. Cottrell was still in possession at the commencement of the action. The fact, urged by defendant, that the latter's tenant may have voluntarily surrendered possession upon some mistaken notion concerning the purchase of the property is, in our view, immaterial. The requirement of the above statute that plaintiff be in the possession of the property at the time he brings his action was complied with.

The contention of defendant based on a claim that plaintiffs were not in the possession of the premises at the time of the filing of this action is without merit.

■ Upon examination of the record herein, we conclude that the findings and judgment of the trial court that the bar of limitation provided by the above statute is not applicable, was not against the clear weight of the evidence.

Judgment affirmed.

The Court acknowledges the services of RUSSELL RUBY, who with the aid and counsel of TOM MASON and ANDY WILCOXEN, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to LAVENDER, J., for review and study, after which, and upon consideration by the Court, the foregoing opinion was adopted.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER, and McINERNEY, JJ.