## O'QUINN et al. v. NOTHAFF.

No. 10495—Opinion Filed March 14, 1922.

(Syllabus.)

1. **Sales — Validity of Contract — False Representations.**

Where a party positively makes false representations to induce another to enter into a contract with him, and such false representations contributed to induce a party to enter a contract, such contract is voidable for fraud, and the rule of caveat emptor cannot be invoked to protect the party making such representations against his fraud.

2. **Fraud—Statutory Construction.**

Under section 903, Revised Laws 1910, the positive statement as a fact of that which is not true with an intention to deceive another party, or for the purpose of inducing a party to do that which he otherwise would not do, constitutes fraud.

3. **Sales — False Representations—Reliance.**

A purchaser may rely upon representations of his vendor where the property is at a distance, or where for any reason the falsity of the representation is not readily ascertainable.

**4. Trial — Instructions — Refusal of Requested Instructions.**

Where instructions as a whole fairly state the law applicable to the case and submit the respective theories of the parties as made under the pleadings and the evidence, it is not error to refuse a requested instruction.

**5. Jury—Jury Trial—Issues of Fact—Statutory Construction.**

Under section 4993, Revised Laws 1910, in an action for the recovery of specific personal property, or its value, the issues of fact arising under the pleadings and evidence are to be tried by a jury unless a jury trial is waived.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by W. C. Nothaff against J. W. O'Quinn and C. D. Acord for possession of one Dodge automobile and damages. Judgment for plaintiff, and defendants bring error. Affirmed.

Womack & Brown and H. Grady Ross, for plaintiffs in error.

Barefoot & Carmichael and Joe B. Wilkerson, for defendant in error.

KENNAMER, J. W. C. Nothaff, as plaintiff, commenced this action in the district court of Stephens county, on the 27th day of April, 1917, against J. W. O'Quinn and C. D. Acord, as defendants, for the possession of one Dodge automobile, or its value in the sum of $750, and damages in the amount of $100.

The defendants answered, denying the allegations of the plaintiff's petition. A jury trial of the cause was had on the 9th day of October, 1918, which resulted in a verdict in favor of the plaintiff against the defendants. Upon the verdict of the jury the court entered judgment in favor of the plaintiff for possession of the Dodge automobile, or, in event a delivery of the car was not made to the plaintiff, that he have judgment against the defendants for the sum of $275, the difference in value between the Dodge automobile and the Ford automobile, which the defendants had traded to the plaintiff for the Dodge car.

Defendants filed a motion for new trial, which was by the court overruled, and this appeal is prosecuted by the defendants to reverse the judgment of the trial court. Numerous errors have been assigned as grounds for the reversal of the judgment. The parties will be referred to as they appeared in the trial of the cause.

The record discloses that about April 10, 1917, the plaintiff's son, George Nothaff, acting for the plaintiff, W. C. Nothaff, while in the town of Marlow, Okla., commenced to negotiate a car trade with C. D. Acord, Acord acting for J. W. O'Quinn. George Nothaff testified that Acord first proposed to trade him an old 1916 model Ford car for the Dodge car, which belonged to George Nothaff's father, W. C. Nothaff, but he declined to entertain the proposition of trading the Dodge car for the old Ford. That Acord then told him that he had a new Ford car in the garage, which he would trade, owned by J. W. O'Quinn. That after looking at the new Ford car, he told Acord he liked it all right. That Acord told him he had a mortgage on some land which he would have to put in as part payment for the Dodge car. That Acord pulled out his mortgage and he looked at it, but he did not know anything about it. It was then suggested that they go and see the bankers about the mortgage. That Acord said, "Go over there and Mr. McKinney can tell you about it." That he went over to the bank, handed Mr. McKinney the mortgage, and told him that Mr. Acord wanted $325 for it, and he wanted to know if it was any account. Mr. McKinney, the banker, looked at it and said, "Yes, it is all right." He testified, further, that Acord said the land in the mortgage was located about ten miles northwest of Marlow and two-thirds of it was in alfalfa.

After some negotiations between the parties they went out from Marlow into the country where the plaintiff, W. C. Nothaff, resides, Acord and O'Quinn going with George Nothaff. On arriving at the plaintiff's home, George Nothaff handed the note and mortgage to his father, W. C. Nothaff, and told him that Acord and O'Quinn had a new Ford car they wanted to trade for the Dodge car and wanted to transfer the note and mortgage on the difference between the cars. The plaintiff asked his son what he knew about the note and mortgage, and he answered, "Nothing, except Mr. McKinney said it was all right." The plaintiff replied, "If Mr. McKinney said it was all right, I would bet on it." Both the Nothaffs testified that Acord and O'Quinn positively stated that the land described in the mortgage was located about ten miles northwest of Marlow, Okla., and that two-thirds of it, which would be 30 acres, was in alfalfa.

Joe Shannon testified on behalf of the plaintiff that Acord told him that he paid McKinney $50 to O. K. the paper in the

deal, and that Acord had tried to trade the paper to him, representing that the land described in the mortgage was west of Marlow.

Evidence was introduced on behalf of the plaintiff that he is unable to read, and also that his son could read but very little.

The depositions of John Young and J. W. Phelps were introduced, and their testimony was to the effect that they knew the land, in a general way, described in the mortgage, and that the land is practically worthless. The land described in the mortgage was located in Brewster county, Tex.

The cars were exchanged at the home of the plaintiff, W. C. Nothaff receiving the Ford car, a note in the sum of $325 signed by John J. Lancaster and Mary J. Lancaster, payable to Andy Carry, indorsed by Carry to Cecil Taylor without recourse; transferred by Cecil Taylor to O. D. Acord without recourse; transferred by Acord to W. C. Nothaff without recourse; and a $25 check; the note being secured by the real estate mortgage on 40 acres of land in Brewster county, Tex. The Dodge touring car of the plaintiff, W. C. Nothaff, was turned over to J. W. O'Quinn in consideration of the above named property.

In a day or two after the trade was made, George Nothaff went over to Lindsay, went into a bank and inquired about the note and mortgage. His attention was called to the fact that the land described in the mortgage was located in Brewster county, Tex., and when he arrived back home, the Nothaffs went over to O'Quinn's house and notified him the note and mortgage were no good, and they tendered to O'Quinn all the property which Nothaff had received from him in exchange for the Dodge car, offering to rescind the contract whereby the exchange of the cars was made.

The evidence discloses that O'Quinn had paid Acord $300 in cash for making the trade exchanging the cars. The petition of the plaintiff specifically charged Acord and O'Quinn with having induced the plaintiff to exchange the cars by making false representations to him, which were known by Acord and O'Quinn to be false at the time the same were made; that the plaintiff relied upon said representations in entering into the contract, exchanging the cars.

The decisive issue involved in this case is one of fraud. The evidence upon the issue of fraud was conflicting.

The first proposition argued by counsel for defendants is that the doctrine of caveat emptor applies to this transaction, which requires a purchaser to use reasonable prudence to avoid deception. 20 Cyc. 49. But the rule of caveat emptor only requires the purchaser of property to use reasonable diligence, and, generally, reasonable diligence depends upon all the circumstances attending the transaction. 20 Cyc. 49.

This court, in the case of Werline v. Aldred, 57 Okla. 391, 157 Pac. 305, approved the rule announced by Mr. Bigelow in his work on Fraud (vol. 1, p. 523) as follows:

"The proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were specially open to him. * * * "

Many authorities are cited in this opinion supporting the rule that a positive representation of a fact by a party generally entitled to be relied and acted upon, entitles the injured party receiving such representation to relief, and such party is not bound to verify such representation by an independent investigation. Section 903, Rev. Laws 1910, defines actual fraud to be:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract:

"First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

"Second. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.

"Third. The suppression of that which is true, by one having knowledge or belief of the fact.

"Fourth. A promise made without any intention of performing it; or,

"Fifth. Any other act fitted to deceive."

It is plain, under the above statute, that if the testimony of the plaintiff and his witnesses in this cause is true, the defendants induced the plaintiff to enter into the contract for the exchange of the cars by committing a fraud, and the credibility of the witnesses in this jurisdiction is one for the jury. Section 4993, Rev. Laws 1910, provides:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived.

or a reference be ordered, as hereinafter provided."

This being an action for the recovery of specific personal property, any issue of fact arising under the pleadings must be submitted to a jury, unless waived. McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176; Avery et al. v. Hays, 61 Okla. 145, 160 Pac. 712.

It is insisted, under the second proposition, that the judgment should be reversed in that the court committed error in refusing to give instruction No. 4 requested by the defendants. The instruction in substance stated that the plaintiff was not entitled to recover where he had an opportunity to read, or have read, the mortgage, unless prevented from so doing by some trick or artifice resorted to by the defendants. It is insisted that this instruction embraced the theory of the defendants' defense, and under the pleadings in the evidence the defendants were entitled to have their theory of the case submitted as requested in the instruction. The rule is well settled in this jurisdiction that a party to an action is entitled to have his theory of the case submitted to the jury by proper instructions. Menten v. Richards et al., 54 Okla. 418, 153 Pac. 1177; Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Campbell v. Thomas-Godfrey Land & Loan Co., 81 Okla. 201, 197 Pac. 452. But we are of the opinion that the instructions given by the court fairly presented the issues and theories of the parties to the jury.

We have examined instructions numbered 5, 6, and 7, and it is clear to us that these instructions, as a whole, fairly submitted the issues made under the pleadings and the evidence and the respective theories of the parties to the action to the jury. Instruction No. 7 was more favorable to the defendant O'Quinn than he was entitled to under the evidence. If Acord represented him as his agent in making the contract, he would be bound by any fraud or misrepresentation made by his agent. But this instruction exonerated O'Quinn from liability, unless he had knowledge of the fraud committed by Acord.

The third proposition presented by the defendants is that the court committed error in overruling the defendants' demurrer to the evidence of the plaintiff and in refusing to direct the jury to return a verdict for the defendants.

Counsel in support of this proposition insist that the plaintiff's own testimony discloses the fact that his duly authorized agent had an opportunity to inspect the mortgage and note, and, in fact, did inspect the same and had them examined to his own satisfaction. That the plaintiff, by reason of such acts, is estopped from claiming that he accepted the mortgage and note by reason of a fraudulent misrepresentation as to the locality of the land described in the mortgage. We are unable to agree with counsel in this contention. The rule is from the fact of an independent investigation there arises a presumption that the party relied upon his own judgment, and not upon representations. 26 C. J., sec. 75, p. 1163. But such a presumption is not a conclusive one, nor a presumption of law. Furthermore, this rule has no application where the investigation failed to afford information as to the subject-matter of their representations. 26 C. J., p. 1163.

The witness McKinney, who testified on behalf of the defendants, stated that the only information that he undertook to impart to Nothaff was that the note and mortgage were in legal form. His evidence in no way shows that he intended to, or tried to, impart any information to Nothaff as to the location of the lands described in the mortgage, or as to whether any part of the land was in alfalfa. A purchaser has the right to rely upon representations of his vendor where the property is at a distance, and the falsity of the representations is not readily ascertainable.

The authorities also support the rule that one relying upon representations is not barred from relief because he made an independent inquiry. 26 C. J., p. 1163; Thorne v. Prentiss, 83 Ill. 99; Olcott v. Bolton, 50 Neb. 779, 70 N. W. 366.

The rule appears to be well settled and supported by the authorities that it is not essential to a right of recovery that a representation or concealment should have been the sole cause of action, but it is sufficient if it constitutes one of several inducements and exerted a material influence. 26 C. J., pp. 1165 and 1166. City of Tacoma v. Tacoma Light & Water Co., 17 Wash. 458, 50 Pac. 55.

In the case of Allen v. Pendarvis, 60 Okla. 216, 159 Pac. 1117, this court, in the first paragraph of the syllabus, held:

"In an action to recover damages for fraud and deceit, in order to entitle plaintiff to recover it is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff to take the action from which the injury ensued. If without the fraudulent representations the party injured would not have acted, then such representations

contributed to induce the action, notwithstanding that other equally powerful motives without the existence of which the party injured would not have acted, may at the same time have influenced such action."

Under the fourth proposition presented by counsel for defendants it is insisted that this is purely an equitable action, wherein the plaintiff seeks to rescind a contract, and that it is the duty of the court to weigh the evidence and render or cause to be rendered such judgment as the trial court should have rendered. We do not concur in this contention, for under the statute and authorities herein cited, we are of the opinion that the action was an action for the recovery of specific personal property or its value, and the question of fraud raised by the pleadings and the evidence was a question of fact, which was properly submitted to the jury. However, upon a careful review of the evidence, we are of the opinion that the verdict and judgment of the trial court are not clearly against the weight of the evidence. Had either party insisted upon it, the jury should have been instructed to find the value of the property involved, but as no error has been predicated upon the failure of the jury to make a finding as to the value of the property involved in the controversy, such a right will be deemed to have been waived.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and JOHNSON, MILLER, and NICHOLSON, JJ., concur.