1998 OK CIV APP 121

**Elizabeth GREEN and Eric Green, husband and wife, Plaintiff/Appellees/Counter–Appellants,**

v.

**I.A. JACOBSON; and Thalia Sharon Braly, Individually and d/b/a Braly Investments, Defendant/Appellants/ Counter–Appellees.**

**No. 90434.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 19, 1998.

Rehearing Denied July 28, 1998.

As Corrected Oct. 1, 1998.

Thomas M. Askew, Tulsa, for Plaintiff/Appellees/Counter-Appellants.

Mack M. Braly, Broken Arrow, for Defendant/Appellants/Counter-Appellees.

### OPINION

HANSEN, Judge:

¶1 Plaintiff/Appellees, Elizabeth Green and Eric Green (Buyers), sued Defendant/Appellants, I.A. Jacobson and Sharon Braly (Sellers), for refund of their earnest money deposit under a real estate purchase contract, alleging (1) the contract was never formed because their "offer to purchase was not accepted after [Buyers] had acknowledged receipt of disclaimer or disclosure statements conforming to" the Residential Property Condition Disclosure Act, 60 O.S.Supp.1995 § 831 et seq., and (2) in the alternative, they were not bound by the contract because they were never approved for financing.

¶2 The trial court denied Buyers' motion for summary judgment on their first cause of action, but granted it on the second cause of action, awarding Buyers judgment for $10,-000.00 against Jacobson. Because Buyers' two causes of action were alternative theories for the same relief, the trial court's orders finally determined the action. The trial court also found Braly was not entitled to summary judgment because she had been dismissed by Buyers prior to the trial court's ruling. Sellers seek review of the trial court's orders granting summary judgment against Jacobson and finding Braly was not entitled to judgment in her favor. Buyers counter-appeal the denial of summary judgment on their first cause of action. We reverse the order granting judgment against Jacobson, but affirm the orders denying relief to Buyers on their first cause to action and to Braly.

¶3 Summary judgment is proper only when there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. All conclusions and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Even if the basic facts are undisputed, summary judgment should be denied if reasonable persons might reach different inferences or conclusions from the undisputed facts. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123, 1127.

¶4 We reject summarily Buyers' contention the trial court erred in denying their claim under the Residential Property Condition Disclosure Act. The Act provides the sole and exclusive remedy for its violation is "an action for actual damages, including the cost of repairing the defect, suffered by the purchaser as a result of a defect existing in the property as of the date of acceptance by seller of an offer to purchase." Because Buyers did not purchase the subject property, they may obtain no relief under the Act.

¶5 We may dispose likewise of Braly's claim she was entitled to summary judgment in her favor on Buyers' claims against her in spite of being dismissed as a defendant by Buyers. Buyers had the right to dismiss their action upon payment of costs and without order of court before trial was commenced. 12 O.S.Supp.1991 § 684. Upon such dismissal, the trial court lost jurisdiction over the claim against Braly. *McCully v. Wil–Mc Oil Corp.*, 1994 OK CIV APP 111, 879 P.2d 150, 153.

¶6 Sellers' contention the evidence presents fact questions for the jury as to whether Buyers diligently sought conventional financing and whether they waived the benefits of the Supplemental Financing Clause by seeking and being approved for alternative financing is well taken. Buyers' offer, dated June 22, 1995, was accepted by Jacobson on August 17, 1995. It included the "Financing Supplement Agreement (Conventional)," which provided,

Buyer shall immediately apply for (and complete such application, including payment of required fees, with instructions to lender to order appraisal and to process immediately such application) a conventional loan on the Property and proceed diligently to procure such loan.... If, within 30 days from the Effective Date of this Contract, or such longer period as Seller shall grant, in writing, Buyer has not received approval of a conventional loan: (I) in an amount of not less than 80% of the purchase price (within $50.00); (ii) for a term of not less than 30 years, at an interest rate of not more than 8%, plus private mortgage insurance premiums, if applicable; and (iii) with discount or points, which shall be payable by Buyer, not to exceed 1% of the loan amount; ... then this Contract shall be automatically null and void, in which event the abstract shall be returned to Seller, and earnest money refunded to Buyer. Provided, that Buyer shall be deemed to have waived this condition ... by making application and being approved for a loan with terms other than those described in this paragraph within the time specified in this paragraph, in which event this Contract shall remain in effect except for this clause.

¶ 7  Elizabeth Green testified in her deposition she and her husband "immediately contacted Blake Moffett at Bank of Oklahoma to discuss financing of the property," and Moffett arranged for structural and termite inspections. She said she did not make written application to Bank of Oklahoma because Moffett did not require it and already had their financial statements. When asked if she knew "whether BOK ever considered extended financing on the terms that are called for in the financing supplement of the contract," Ms. Green replied, "I don't believe we discussed any specific terms with them." Eric Green testified as follows in his deposition:

Q  Had you ever instructed Blake Moffett that you needed financing exactly as described in the Supplemental Financing addendum to the real estate sales contract?

A I really don't know. We first met with him at the property. I really don't remember what the conversations were.

. . .

Q  To your knowledge, was a request made of BOK, verbally or in writing, that they advance finance [sic] on the terms set forth in the Financing Supplemental Agreement?

A There is no written documentation between us and BOK. I don't remember whether verbally there was a discussion, you know, specifically to the terms set forth in the Financing Supplemental.

Mr. Green said he learned Bank of Oklahoma would not finance the purchase when he called Moffett while the family was vacationing in California. When they returned, Mr. Green contacted Laurisa Anderson, a loan officer in the "private banking department" at Boatmen's Bank. The record contains a "Loan Authorization" initialed by bank officers on September 12, 1995 approving a five-year loan, subject to certain contingencies. The document reflected Buyers intended to split the property into three lots and sell two of the lots, keeping the lot with the house. Ms. Green testified she never saw that document but learned from Anderson "verbally" that financing was available. She said she found out the lots could not be subdivided "approximately the third week of September."

¶ 8  An agreement extending the time to secure financing to October 10, 1995 was signed by the Greens on September 16, 1995 and by Braly on September 25, 1995. Sellers' realtor, Jane Dickey, stated in her affidavit that on September 26, Ms. Green told her they had sold their residence and another home, and the financing was in place.

¶ 9  On October 4, 1995, Anderson sent a letter to the Greens stating,

Thank you for your recent application dated Sept. 13, 1995 on the purchase of a residence.... At this time, we are unable to meet the rates and terms asked for according to the financing supplemental agreement.... We can, however, offer alternative financing at 8.375% fixed for five years based on a 25 year amortization.

Per our phone conversation, there were several reasons for the short term only financing, one being the questionable future income from Beth.

On October 11, 1995, Ms. Green sent Anderson a letter advising she would be forwarding a letter from her employer stating she would be taking a leave of absence. She wrote, "Because of this new development, I realize that Eric and I will be unable to qualify for the loan on the [subject] property. Once you have received the verification from my employer, I will need you to forward a letter to us stating that our loan has been denied on this basis."

¶ 10 Reasonable persons could reach differing conclusions and inferences from this evidence. Viewing it in the light most favorable to Sellers, one could conclude the Greens never applied for conventional financing, but instead sought and accepted alternative financing based on reselling part of the property. We hold the evidence presents fact questions for the jury as to whether Buyers diligently sought conventional financing and whether they waived the benefits of the Supplemental Financing Clause by seeking and being approved for alternative financing.

¶ 11 Accordingly, the trial court's orders denying summary judgment for Buyers on their first cause of action and finding Braly was not entitled to summary judgment because she had been dismissed by Buyers prior to the trial court's ruling are **AFFIRMED**. The trial court's judgment in favor of Buyers against Jacobson is **REVERSED** and this matter is **REMANDED** for trial.

ADAMS, J., and BUETTNER, P.J., concur.