2003 OK 6

Steven M. ROGERS and Ellen M. Rogers, Husband and Wife, Plaintiffs/Petitioners,

v.

Charles A. MEISER and Barbara S. Meiser, Husband and Wife, Defendants/Respondents.

No. 96,885.

Supreme Court of Oklahoma.

Feb. 4, 2003.

Rehearing Denied May 8, 2003.

Edward O. Lee and Cara Jenkins Raney, Edmond, OK, for Plaintiffs/Petitioners.

Timothy A. Mitchell, Edmond, OK, and Libby A. Mercer, Bethany, OK, for Defendants/Respondents.

LAVENDER, J.:

¶ 1 Plaintiffs, Steven M. and Ellen M. Rogers purchased a house from defendants, Charles A. and Barbara S. Meiser. After experiencing flooding problems they sued defendants for common law actual fraud and violation of the Residential Property Condition Disclosure Act (RPCDA), 60 O.S.Supp. 1995, § 831 et seq. (now O.S.2001).[1] Their petition sought rescission of the purchase contract, restoration of all monies paid by them, and actual and punitive/exemplary damages. The RPCDA allows recovery of actual damages for violation of its provisions (including the cost of repairing the defect), but excludes an exemplary damage recovery. § 837(B).

¶ 2 Upon defendants' motion, the trial court, in effect, dismissed any theory of liability and any remedy not arising under or permitted by the RPCDA on the basis that Act abrogated/supplanted any such theory or remedy, which would include the common law actual fraud claim pled by plaintiffs.[2] The trial judge certified his order for immediate appeal and we previously granted plaintiffs' quest for certiorari to review the certified interlocutory order. We reverse because the RPCDA, neither expressly nor by necessary implication, can be held to have been legislatively intended to supplant/abrogate a common law actual fraud claim anchored on alleged misrepresentations concerning material defects in residential real property made in connection with its sale, or the remedies associated with such a claim, including the potential of a punitive damage award.

### PART I.  STANDARD OF REVIEW.

■ ¶ 3 The first impression question before us is one of law because its resolution will come from interpretation of the RPCDA to decide if that Act can be held to have been legislatively intended to supplant/abrogate a

1. ABW Edmond, Inc. d/b/a Keller Williams Realty is named as a third party defendant in the caption of the trial court order that is the subject of this appeal. ABW is not a party to the appeal and we have not listed it in the caption of this opinion.

2. The order granting defendants' motion to dismiss uses the phrase "causes of action" rather than "theory or theories of liability". *"Only a single cause of action can be predicated on the same set of facts,* but different remedies and theories of liability may be pressed in support of each claim alleged." *Fleet v. Sanguine, Ltd.,* 1993 OK 76, 854 P.2d 892, 901. [Italics in original; footnotes omitted.] "When a claim for damages arises from one occurrence or transaction, it affords the plaintiff but a single cause of action." *Id.,* f.n. 48, 854 P.2d 892; *see also Nealis v. Knecht,* 1995 OK CIV APP 78, 901 P.2d 228, 231. As we view the materials contained in the appeal record (including plaintiffs' petition initiating the lawsuit), plaintiffs present but a single cause of action based on one set of facts; they do not assert multiple causes of action.

common law actual fraud claim and the remedies available upon proof of such a claim. A legal question involving statutory interpretation is reviewed *de novo,* i.e. by a non-deferential, plenary and independent examination of the trial court's legal ruling. *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8 and f.n. 5, 33 P.3d 302, 305 and f.n. 5.

## PART II. BACKGROUND.

¶ 4 The pertinent allegations of plaintiffs' trial court petition follow. In 1999 plaintiffs and defendants entered into a written contract for the purchase and sale of residential real property located in Edmond, Oklahoma. During the period of their ownership defendants experienced repeated and heavy flooding of the residential structure and defendants tried to stop the flooding problems by installing a small french drain system and a barricade on the property's east boundary. The repairs were inadequate to cure the flooding problems and defendants knew the repairs were inadequate, having experienced flooding after the repairs were completed. In order to deceive plaintiffs, defendants deliberately concealed the nature and scope of the flooding problems during the pre-sale negotiations by, among other devices, stating on a disclosure statement that, although the property had experienced flooding, it had been repaired.

¶ 5 The real estate purchase contract and a residential property condition disclosure statement form are attached to the petition. The latter bears Mr. Meiser's signature and that of both plaintiffs as having received a signed copy. Questions numbered 5 and 6 on the form, which are answered yes, ask: "[a]re you aware of water seepage or leakage in any of the improvements on the property[ ]" and "[h]as the property been damaged or affected by flood, storm run-off, sewer backup, drainage or grading problems?" In part of the form allowing explanation of a "yes" answer this hand-written language appears: "# 5 & # 6 storm run off on East Side of home repaired by retaining wall, sidewalk and french drain about 3 years ago".[3]

¶ 6 Plaintiffs' petition also alleges they bought the property believing the flooding had been repaired, but after the purchase the property flooded on numerous occasions. They assert the cost to stop the flooding will exceed $10,000.00. They also claim defendants' conduct was fraudulent, deceitful, willful and intentional. The petition seeks the contract's rescission and restoration of all monies paid by them, including funds sufficient to discharge their liability on the note and mortgage used to pay the balance of the purchase price.[4] An *in personam* judgment against defendants for actual damages in excess of $10,000.00 and punitive damages in excess of $10,000.00 is also sought.[5]

---

3. Also attached to the petition (as attachments to the purchase contract) are documents titled 1) supplemental financing agreement to the real estate purchase contract or the condominium real estate purchase contract and 2) property condition addendum. Another document titled, exclusive right to sell or lease listing agreement, is also attached to the petition.

4. The purchase price set out in the real estate purchase contract is $54,500.00.

5. Although, at the pleading stage, plaintiffs are requesting inconsistent remedies (i.e. rescission **and** damages—both compensatory and punitive) the doctrine of election of remedies has been severely restricted by 12 O.S.2001, § 2008(E)(2), a part of the Oklahoma Pleading Code, 12 O.S. 2001, § 2001 et seq., as amended. *See Howell v. James,* 1991 OK 47, 818 P.2d 444, 448. At common law a party was required to elect between remedies of rescission and damages. *Dusbabek v. Bowers,* 1934 OK 594, 43 P.2d 97. Today, while inconsistent judgments or double recovery are **not** permissible, inconsistent theories and remedies **may** be asserted at the pleading stage **and**, in fact, relied on throughout trial. *Howell,* 818 P.2d at 447–448. In its present posture, i.e. dismissal of certain theories and remedies at the pleading stage, we, of course, need not resolve what theories or remedies, if any, plaintiffs will be able to prevail on.

Further, defendants assert in their January 18, 2002 appellate reply brief (pp. 1–2) that prior to exchanging closing documents, they had not met plaintiffs in person or engaged in any direct communications with them concerning the property—in essence, they assert the parties dealt through their realtor(s) prior to closing—and they claim plaintiffs and their agents inspected the property. Also, as the text notes (**PART II[,] BACKGROUND,** ¶ 4), plaintiffs' trial court petition contains the phrase "among other devices" when describing defendants' alleged deception concerning the true nature and scope of the flooding problems, in addition to relying on the language in the disclosure form that although the property had experienced flooding, it had been repaired. For purposes of this opinion, we need

¶ 7 Defendants moved to dismiss any theory of liability or remedy not brought under or allowed by the RPCDA.[6] In effect, they asserted (as on appeal) any theory or remedy beyond that specified in or allowed by the RPCDA's provisions is supplanted or abrogated by that Act; and that the RPCDA provides the sole and exclusive civil remedy for failure to disclose information concerning defects associated with the sale of residential real property or for providing inaccurate information in connection with a defect.[7] Plaintiffs argued in the trial court (as on appeal) that no language in the RPCDA can legitimately be interpreted to exhibit a legislative intent to abrogate the common law fraud claim raised in their petition or to limit the remedies for such fraud normally available at common law, including the potential for a recovery of punitive damages.[8] The trial judge, agreeing with defendants, dismissed any theory or remedy not arising under or allowed by the RPCDA and he certified his order for immediate appeal. We previously exercised our discretion to review the order and now hold the trial judge erred.[9]

## PART III. ANALYSIS.

■ ¶ 8 The RPCDA was passed in 1994, effective July 1, 1995 [1994 Okla Sess. Laws, Ch.198, § 10 (West)], and has since remained unchanged.[10] We must decide if the Legislature intended the RPCDA to abrogate or supplant the common law actual fraud claim and the potential exemplary damage recovery pled in plaintiffs' suit. The question needs resolution because the RPCDA precludes a punitive damage award for its violation [§ 837(B)—as already noted], while in certain statutorily-defined circumstances such damages are recoverable in a common law actual fraud case. 23 O.S.Supp. 2002, § 9.1.[11] Under § 9.1 punitive damages

---

not decide the exact alleged deceitful conduct plaintiffs rely on to support their fraud claim; nor need we settle any potential factual dispute regarding the alleged fraudulent misrepresentations.

6. Defendants' dismissal motion uses the phrase "causes of action", rather than "theories of liability". As explained in note 2, *supra*, we view plaintiffs' trial court petition as presenting but a single cause of action based on one set of facts; it does not assert multiple causes of action.

7. Defendants' motion to dismiss characterizes the theories relied on in plaintiffs' petition as fraud, negligent misrepresentation and fraudulent misrepresentation. Although under certain circumstances a negligent or even an innocent misrepresentation may give rise to a claim known in the law as constructive fraud, such a claim requires a breach of some legal or equitable duty. *Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, 882 f.n. 11, *cert. denied* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). We read nothing in the petition attempting to raise a claim of common law negligent misrepresentation or constructive fraud. Instead, the petition, fairly straightforwardly, raises intentional fraud, i.e. plaintiffs' common law claim is that defendants deliberately and consciously lied to them in the disclosure form by indicating the flooding problem(s) were repaired. An intentional lie with intent to deceive cannot be said to be merely a negligent misrepresentation. Thus, the question becomes whether the Residential Property Condition Disclosure Act (RPCDA), 60 O.S.Supp. 1995, § 831 et seq. (now O.S.2001), was legislatively intended to supplant/abrogate a common

law actual fraud claim and the potential remedies associated with such a claim? This is the issue we decide in the instant appeal.

8. Plaintiffs also assert on appeal (as in the trial court) that if the RPCDA is construed to abrogate the common law it is unconstitutional as prohibited special legislation in violation of OKLA. CONST. art. 5, §§ 46 and 59. In view of our disposition we need decide no issue concerning the RPCDA's constitutionality.

9. Oklahoma Supreme Court Rules 1.50–1.56 [12 O.S.2001, Ch.15, App.1] and 12 O.S.2001, § 952(b)(3) set out the authority and procedures regarding this Court's discretionary exercise of review of certified interlocutory orders of the district courts.

10. A published opinion of the Court of Civil Appeals, *Green v. Jacobson*, 1998 OK CIV APP 121, 963 P.2d 26, interpreted the RPCDA and held the Act inapplicable to a suit for recovery of earnest money because plaintiffs there did not buy the property. *Green* provides little, if any, guidance as to the proper disposition of this case.

11. When plaintiffs' trial court petition was filed 23 O.S.Supp.1995, § 9.1 was in effect. Though § 9.1 was amended in the 2002 legislative session, its material parts as to what conduct is required on a defendant's part in order to allow a punitive damage recovery (and the amount thereof—i.e. caps/limitations on amount) remain unchanged. 2002 Okla. Sess. Laws, Ch.462, § 1 (West); 23 O.S.Supp.2002, § 9.1. Section 9.1 currently provides:

are allowed (assuming the statutorily-designated level of proof is shown) where a defendant has acted: 1) in reckless disregard for the rights of others [§ 9.1(B)], 2) intentionally and with malice toward others [§ 9.1(C)], or 3) intentionally and with malice, while at the same time engaging in conduct life-threatening to humans [§ 9.1(D)]. There is no doubt a common law claim for actual fraud is a type of claim that holds the potential for properly falling under one or more of the specified provisions of § 9.1. *See Z.D. Howard Company v. Cartwright*, 1975 OK 89, 537 P.2d 345 (recognizing punitive damages may be recovered where a defendant has engaged in wanton, malicious and intentional fraudulent acts).

■ ¶ 9 The common law remains in force in Oklahoma unless modified by our

A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that:

1. The defendant has been guilty of reckless disregard for the rights of others; or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

a. One Hundred Thousand Dollars ($100,000.00), or

b. the amount of the actual damages awarded.

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

E. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

G. This section shall apply to all civil actions filed after the effective date of this act.

constitution, statutes, judicial decisions and the conditions and wants of the people.[12] *Brown v. Founders Bank and Trust Co.,* 1994 OK 130, 890 P.2d 855, 863. A presumption favors preservation of common law rights [*Satellite System, Inc. v. Birch Telecom of Oklahoma, Inc.,* 2002 OK 61, ¶ 7, 51 P.3d 585, 588] and the common law may not be abrogated by **mere** implication; rather, its alteration must be clearly and plainly expressed by the Legislature. *Greenberg v. Wolfberg,* 1994 OK 147, 890 P.2d 895, 900. Also, an ambiguous, doubtful or inconclusive legislative text is insufficient upon which to rest a presumption of an intent to abrogate. *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1225. Only by **express** language **or by necessary implication** may legislative abrogation be found. *Roxana Petroleum Co. v. Cope,* 1928 OK 442, 269 P. 1084, 1085 *Third Syllabus by the Court; see also National Trailer Convoy, Inc. v. Oklahoma Turnpike Authority,* 1967 OK 15, 434 P.2d 238, 244 (citing *Roxana Petroleum Co. v. Cope* for proposition that valuable right existing by virtue of common law will not be abrogated by a subsequent statute which does not expressly or by necessary implication destroy such previously existing right). Implied abrogation of a common law right will **only** be found where a statute is enacted which undertakes to cover the entire subject treated **and** is clearly/unmistakably designed as a substitute for the common law **or** where the common law and statutory law are so repugnant that both in reason may not stand or coexist. *Nicholas v. Baldwin Piano Co.,* 71 Ind.App. 209, 123 N.E. 226 (1919).

■ ¶ 10 We also note a distinction exists, in terms of an exclusivity resolution, between the situation where a court is considering the question of whether there has been legislative abrogation of an existing common law right and one where a statutory enactment appears to create both a new right and a new remedy. *See Tate v. Browning–*

*Ferris, Inc., supra,* 833 P.2d at 1225–1226 and f.n.36. When an enactment imposes some new duty and fashions a remedy for the enforcement of a new right, the statutorily-designated remedy may be deemed the exclusive means by which a breach of the new right becomes redressible. *Id.* at f.n. 36, 833 P.2d 1218; *see Alfe v. New York Life Ins. Co.,* 1937 OK 243, 67 P.2d 947; *Ewing v. Cadwell,* 1925 OK 751, 247 P. 665; *Lavery v. Brigance,* 1925 OK 702, 242 P. 239. In the latter situation, of course, no common law right was preexistent and an exclusivity determination cannot be said in any normal sense to have abrogated or supplanted a right recognized by the common law.

¶ 11 The RPCDA applies to residential real property with not less than one nor more than two dwelling units [§ 832(8) ], i.e. to single family residences and duplexes only. Also, it does not apply to the sale of newly constructed, previously unoccupied dwellings [§ 838(A)(9) ] or to various other transfers of residences detailed in § 838(A)(1)-(8), e.g. transfers pursuant to court order, between co-owners, to or from government entities, or between spouses resulting from divorce or legal separation decrees. The RPCDA defines the word seller at § 832(2) as follows:

2. "Seller" means one or more persons who are attempting to transfer a possessory interest in property and who are either:

a. represented by a real estate licensee; or

b. not represented by a real estate licensee but receive a written request from the purchaser to deliver or cause to be delivered a disclaimer statement or disclosure statement as such terms are defined in [§ 833.]

A "real estate licensee" for purposes of the RPCDA is "a person licensed under the Oklahoma Real Estate License Code[.]" [13] Thus, the Act is also inapplicable if property

---

**12.** Title 12 O.S.2001, § 2 provides:
The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to

any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.

**13.** The Oklahoma Real Estate License Code is found at 59 O.S.2001, § 858–101 et seq., as amended.

owners market their house without using a real estate licensee and buyer—presumably unaware of the RPCDA or for other reason—fails to request a disclosure statement.[14] The parties here do not dispute the RPCDA's applicability in that defendants were represented by a real estate licensee and a disclosure statement was provided to plaintiffs.[15]

¶ 12 Defendants primarily rely on portions of § 837 of the RPCDA to support their abrogation argument, as well as the Act's title. In relevant part § 837 provides:

A. The purchaser may recover in a civil action only in the event of any of the following:

**14.** The RPCDA defines disclosure as "a written declaration ... based on actual knowledge of the seller regarding certain physical conditions of the property. A disclosure for purposes of the [RPCDA] is not a warranty, implied or express, of any kind[.]" § 832(10). A defect "means a condition, malfunction or problem that would have a materially adverse effect on the monetary value of the property, or that would impair the health or safety of future occupants of the property[.]" § 832(9).

**15.** The information the disclosure form must contain regarding defects within the seller's knowledge is set out in § 833. Section 833(A)-(C) provides:

A. A seller of property located in this state shall deliver, or cause to be delivered, to the purchaser of such property one of the following:
1. A written property disclaimer statement on a form established by rule by the Oklahoma Real Estate Commission which states that the seller:
a. has never occupied the property and makes no disclosures concerning the condition of the property, and
b. has no actual knowledge of any defect; or
2. A written property condition disclosure statement on a form established by rule by the Oklahoma Real Estate Commission which shall include the information set forth in subsection B of this section.
B. 1. The disclosure statement shall include an identification of items and improvements which are included in the sale of the property and whether such items or improvements are in normal working order. The disclosures required shall also include a statement of whether the seller has actual knowledge of defects or information in relation to the following:

1. The failure of the seller to provide to the purchaser a disclaimer statement or a disclosure statement and any amendment prior to acceptance of an offer to purchase;
**2. The failure of the seller to disclose in the disclosure statement or any amendment provided to the purchaser a defect which was actually known to the seller prior to acceptance of an offer to purchase; or**

\* \* \*

B. **The sole and exclusive civil remedy for a failure under subsection A of this section by the seller** or the real estate licensee **shall be an action for actual damages,** including the cost of repair-

a. water and sewer systems, including the source of household water, water treatment systems, sprinkler systems, occurrence of water in the heating and air conditioning ducts, water seepage or leakage, drainage or grading problems and flood zone status,
b. structural systems, including the roof, walls, floors, foundation and any basement,
c. plumbing, electrical, heating and air conditioning systems,
d. infestation or damage of wood-destroying organisms,
e. major fire or tornado damage,
f. land use matters,
g. existence of hazardous or regulated materials and other conditions having an environmental impact,
h. any other defects known to the seller, and
i. other matters the Oklahoma Real Estate Commission deems appropriate.
2. The disclosure statement shall include the following notices to the purchaser in bold and conspicuous type:
a. "The information and statements contained in this disclosure statement are declarations and representations of the seller and are not the representations of the real estate licensee.",
b. "The information contained in this disclosure statement is not intended to be a part of any contract between the purchaser and the seller.", and
c. "The declarations and information contained in this disclosure statement are not warranties, express or implied of any kind, and are not a substitute for any inspections or warranties the purchaser may wish to obtain."
C. Either the disclaimer statement or the disclosure statement required by this section must be completed, signed and dated by the seller. The date of completion on either statement may not be more than one hundred eighty (180) days prior to the date of receipt of the statement by the purchaser.

ing the defect, suffered by the purchaser as a result of a defect existing in the property as of the date of acceptance by the seller of an offer to purchase **and shall not include the remedy of exemplary damages.**

* * *

F. **This act applies to, regulates and determines rights, duties, obligations and remedies of the seller, the real estate licensee and the purchaser with respect to disclosure of defects in property.** (Emphasis added.) [16]

The RPCDA's title provides:

An Act relating to property; providing short title; defining terms; requiring seller of residential real property to deliver disclaimer or disclosure statement to purchaser; specifying contents of statements; requiring disclosure statement include certain notices; specifying time period for completing statements; requiring Oklahoma Real Estate Commission develop and amend forms by rule and make forms available to certain persons; requiring statements be delivered prior to acceptance of offer; requiring certain actions if statements are provided or defects become known after offer is accepted; requiring certain written acknowledgment; **providing immunity from liability for stated defects and inaccurate information under certain conditions;** allowing certain information to satisfy requirements of disclosure; stating duties of real estate licensees; **limiting recovery in civil action to certain events; limiting remedy;** stating statute of limitation; providing for certain costs and fees; **limiting effect of noncompliance;** stating application of act and exempting certain transfers; construing act; stating standard for notices and acknowledgments; providing for codification;

and providing an effective date. (Emphasis added.)

Okla.Stat.Ann. tit. 60, § 831, Historical and Statutory Notes (West 2003 pocket part). In addition § 835(A)-(B) arguably lends, at least, some support to an abrogation/supplantation intent. Section 835(A)-(B) provide in pertinent part:

A. **The seller shall not be liable for a defect or other condition in the property if the existence of the defect or other condition in the property was disclosed in the disclosure statement** or any amendment delivered to the purchaser before acceptance of the offer to purchase.

B. The seller shall not be liable for any erroneous, inaccurate or omitted information supplied to the purchaser as a disclosure required by this act if:

1. The error, inaccuracy or omission results from an approximation of information by the seller, provided:

a. accurate information was unknown to the seller at the time the disclosure was made,

b. the approximation was clearly identified as such and was reasonable and based on the best information available to the seller, and

c. the approximation was not used to circumvent the disclosure requirements of this act;

2. **The error, inaccuracy or omission was not within the actual knowledge of the seller[.]** (Emphasis added.)

◼ ¶ 13 The Oklahoma Association of Realtors played an active role in development and passage of the RPCDA. Gatlin, *Reforming Residential Real Estate Transactions: An Analysis of Oklahoma's Disclosure Statute*, 22 Okla. City U.L.Rev. 735, 744 (1997). One of the main purposes of the Act appears to be placing **a limitation** on the

---

**16.** Subsection 837(A)(3) provides the purchaser also has a civil action where the real estate licensee fails to disclose to purchaser defects actually known to said licensee prior to acceptance of an offer to purchase that were not included in the disclosure statement or an amendment provided to the purchaser. Subsections 837(C), (D) and (E) provide, respectively, the action shall be commenced within two (2) years after the date of transfer of the property; in an action under the RPCDA, the prevailing party shall be allowed court costs and a reasonable attorney fee to be set by the court and to be collected as costs; and a transfer of a possessory interest in property subject to the Act may not be invalidated solely because of the failure of any person to comply with the RPCDA.

doctrine of *caveat emptor* in real estate sales and **expanding** the situations in which a seller will be liable for structural or other covered defects. *Id.* at 745 and 748.[17] In other words, the Act gives the buyer a remedy in situations where under the common law **there would be no remedy** because of application of the doctrine of *caveat emptor.*[18]

■ ¶14 Under the common law, as a general rule, the doctrine of *caveat emptor* applies where a buyer inspects property prior to sale and silence on a seller's part does not constitute fraud where it relates to conditions that buyer, through the exercise of reasonable diligence, could discern upon the inspection. *Gutelius v. Sisemore,* 1961 OK 243, 365 P.2d 732, 733 *First and Second Syllabi by the Court.* Furthermore, for liability for fraud to attach a plaintiff's reliance on a misrepresentation must be justifiable [*State ex rel. Southwestern Bell Tel. Co. v. Brown,* 1974 OK 19, 519 P.2d 491, 495] and a buyer may not be heard to have been deceived by seller's representations by his own voluntary blindness. *Nowka v. West,* 1919 OK 367, 186 P. 220 *Second Syllabus by the Court.* Thus, under Oklahoma's judicially

expressed common law, a fraud claim in regard to the sale of real estate may not be based on misrepresentations concerning **patent** defects when the purchaser has been afforded an unimpeded opportunity to inspect the property, availed themselves of such opportunity and the defect is obvious. *Gutelius v. Sisemore, supra,* (buyer inspects property, flood prone nature of residence open and obvious, i.e. patent, and seller remains silent concerning flooding problem). Of course, where a vendor is guilty of fraudulent concealment of a **latent** defect affecting the value of property for the purpose for which it was bought or makes positive misrepresentations of a material nature where the purchaser does not inspect or his inspection is somehow impeded, the *caveat emptor* doctrine will be deemed inapplicable. *See Finefrock v. Carney,* 1953 OK 347, 263 P.2d 744, 745 *Second Syllabus by the Court; Brauchitsch v. Cravens,* 1978 OK CIV APP 48, 604 P.2d 379 (involving concealment of latent defect in residence); *O'Quinn v. Nothaff,* 1922 OK 88, 205 P. 498; and Goforth, *Sales of Structurally Defective Homes: the*

17. *Caveat emptor* means, let the buyer beware or take care. BLACK'S LAW DICTIONARY 281 (Revised Fourth Edition 1968). It summarizes the maxim that a purchaser must examine, judge, and test for himself/herself. *Id.*

18. Another purpose of the RPCDA appears to delineate the duty or lack thereof of real estate licensees involved in real estate transactions. Section 836 of the RPCDA provides in pertinent part:

A. A real estate licensee representing a seller has the duty to obtain from the seller a disclaimer statement or a disclosure statement and any amendment required by this act and to make such statement available to potential purchasers prior to acceptance of an offer to purchase.

B. A real estate licensee representing or assisting a purchaser has the duty to obtain and make available to the purchaser a disclaimer statement or a disclosure statement and any amendment required by this act prior to the acceptance of an offer to purchase.

C. A real estate licensee has the duty to disclose to the purchaser any defects in the property actually known to the licensee which are not included in the disclosure statement or any amendment.

D. A real estate licensee who has complied with the requirements of subsections A, B and C of this section, as applicable, shall have no

further duties to the seller or the purchaser regarding any disclosures required under this act.

* * *

E. A real estate licensee has no duty to the seller or the purchaser to conduct an independent inspection of the property and has no duty to independently verify the accuracy or completeness of any statement made by the seller in the disclaimer statement or the disclosure statement and any amendment.

In 1987, this Court ruled that a real estate broker had no independent duty flowing in favor of a potential purchaser to investigate a residence for structural defects in order to apprise the purchaser of defects and was not liable to a purchaser on a fraud theory for passing on representations made by sellers to broker that a house was free from material structural defects, at least in a situation where the purchaser signed a release at closing stating she had inspected the house; accepted it in its present condition; that she waived all claims against vendors to repair; and that she relieved vendors and broker from any liability. *Dawson v. Tindell,* 1987 OK 10, 733 P.2d 407; *see also Rice v. Patterson Realtors,* 1993 OK 103, 857 P.2d 71. We have no occasion here to delve into questions concerning the potential liability or non-liability of real estate licensees either under the RPCDA or at common law.

*Potential Liability of Sellers and Real Estate Brokers*, 41 Okla. L.Rev. 447 (1988).[19]

¶ 15 Under the RPCDA the seller appears liable even if a covered defect is **patent** (i.e. readily observable) if he/she has actual knowledge of the defect and either does not disclose it in the disclosure statement or does not provide buyer a disclosure statement. § 837(A)(1)-(2).[20] The Act, in major part then, expands the liability of sellers where no liability would exist at common law via an actual fraud theory because the buyer's reliance on misrepresentations or failure to speak on the seller's part is viewed as unjustifiable or unreasonable given the open/patent nature of a particular defect, whether or not the buyer actually noticed, saw or was aware of the defect, where the buyer conducted an unimpeded inspection of the property.[21]

¶ 16 Of course, as the pertinent portions of the RPCDA's title and § 837 plainly set forth, another purpose of the Act is limiting the remedy available to a buyer and providing a certain amount of immunity to a seller. It is not clear, however, that the immunity granted and the concomitant limit of remedy has as its intent so broad a sweep as to engulf all previously existing common law claims. Neither the title's language nor that in § 837 unequivocally expresses such an intent. Instead, the language employed may just as easily be read to have been intended to merely limit the scope of recovery in a civil action **brought under and sanctioned by the RPCDA itself,** but **not** intended to reach a previously existing common law claim of actual fraud.

¶ 17 The elements of common law fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his/her own detriment. *Gay v. Akin*, 1988 OK 150, 766 P.2d 985, 989; *D & H Co., Inc. v. Shultz*, 1978 OK 71, 579 P.2d 821, 824; *Ramsey v. Fowler*, 1957 OK 61, 308 P.2d 654 *Syllabus by the Court*. Fraud is never presumed and it must be proved by clear and convincing evidence. *Brown v. Founders Bank and Trust Co., supra*, 890 P.2d at 862 f.n. 17.[22] To entitle a plaintiff to recover punitive damages in an action sounding in tort for fraud, the proof must show the act constituting the cause of action is actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent. *Lenn v. Miller*, 1965 OK 86, 403 P.2d 458, 461-462. Thus, though a defendant's acts may constitute fraud at law and allow a recovery of actual damages, not every fraud case will support a punitive damage recovery. *Id.* Accordingly, to recover punitive damages in a common law fraud claim a plaintiff would not be able to merely rely on a violation of the RPCDA, he/she would be required to show not only all the elements of actionable fraud, but evil intent or such aggravating circumstances as to be deemed equivalent to such intent. A common law fraud claim, thus, can co-exist side-by-side with the RPCDA without doing violence to any provisions of that Act or resulting in absolute repugnancy to the remedial scheme set forth therein.[23]

**19.** Under the common law there is usually no requirement that a purchaser make an independent investigation. *O'Quinn v. Nothaff*, 1922 OK 88, 205 P. 498, 500.

**20.** We need not decide here if a viable defense to seller exists to a claim under the RPCDA in the situation where buyer having actual knowledge of a covered defect (latent or patent), still purchases the residence where seller (also having actual knowledge of the defect) either fails to disclose it on the disclosure statement or fails to provide a disclosure statement to the buyer.

**21.** At the present stage of this lawsuit, we do not know whether the alleged defect concerning the alleged flooding problem was patent or latent.

**22.** Even in equity—though it may be inferred—fraud must be proved by clear and convincing evidence. *Ely Walker Dry Goods Co. v. Smith*, 1916 OK 907, 160 P. 898, 901.

**23.** Of course, to the extent a new right has been created by the RPCDA in regard to disclosure of defects and for breach of said right, a statutory remedy provided (the right, duty and liability connected therewith **not** previously being recognized at common law because of the doctrine of *caveat emptor*), the new right's violation may be deemed redressible solely by the statutorily-designated remedy. In such a situation punitive damages would, of course, not be recoverable because expressly excluded under the Act.

¶ 18 Examples of legislative language that unambiguously express an intent to abrogate or supplant a common law claim or remedy are found in the Oklahoma Workers' Compensation Act (WCA), 85 O.S.2001, § 1 et seq., as amended and the Oklahoma Governmental Tort Claims Act (GTCA), 51 O.S.2001, § 151 et seq., as amended. The WCA at 85 O.S.2001, § 12 provides in pertinent part:

> "The liability prescribed ... shall be exclusive and in place of all other liability of the employer ... **at common law or otherwise,** for such injury...." (Emphasis added.)

Title 51 O.S.2001, § 153(B), a part of the GTCA, states:

> "The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee **at common law or otherwise.**" (Emphasis added.)

The RPCDA, unlike the WCA and GTCA, has no express language supplanting all **common law liability,** but does contain language one **might** say was intended to replace all previously recognized common law theories or remedies. However, the RPCDA's text is ambiguous and inconclusive as showing intent to abrogate/supplant all common law claims and remedies. Also, allowing a common law actual fraud claim and the RPCDA to coexist does not necessarily result in repugnant remedial structures. Thus, we ultimately decide a finding of legislative abrogation of such a claim is not warranted and a more cogent expression of legislative intent to abrogate/supplant all common law liability or remedies is required before abrogation/supplantation may be given our judicial imprimatur.

## PART IV. SUMMARY.

¶ 19 The trial judge dismissed any theory of liability and any remedy raised by plaintiffs' petition not arising under or permitted by the RPCDA. He did so on the basis the RPCDA abrogated or supplanted any such theory or remedy. In doing so the trial judge dismissed the common law actual fraud claim pled by plaintiffs. In that the RPCDA neither expressly nor by necessary implication can be found to have been legislatively intended to supplant or abrogate a common law actual fraud claim anchored on alleged misrepresentations concerning material defects in residential real property made in connection with its sale, or the remedies associated with such a claim, including the potential of a punitive damage award, the trial judge erred.

¶ 20 The trial court order is **REVERSED.**

¶ 21 WATT, C.J., OPALA, V.C.J., HODGES, HARGRAVE, KAUGER and WINCHESTER, JJ., concur.

¶ 22 SUMMERS and BOUDREAU, JJ., dissent.

---

Further, we do not consider *Wagoner v. Bennett,* 1991 OK 70, 814 P.2d 476, as controlling this matter. It is quite clear that this Court's decision in *Wagoner* was informed by an understanding that historically, landlord/tenant law to a large extent was controlled by Oklahoma statutory law. *Id.* at 480, 814 P.2d 476. We are aware of no similar deep-seated historical statutory tradition in Oklahoma law governing the buyer/seller relationship in regard to the sale of residential real property.